ERASMUS FREEMAN

*v.*

ISLAND HEIGHTS HOTEL AND IMPROVEMENT COMPANY.

[Decided March 26th, 1909.]

1. A conveyance of lots according to a map upon which a "camp ground" is laid out implies a covenant on the part of the grantor that such ground is to be used in the manner indicated.

2. One who buys lots according to a map upon which a "camp ground" is laid out may enforce the implied covenant that such ground is to be used in the manner indicated, though the lots are part of premises formerly laid out and dedicated as an avenue.

———

On final hearing on bill, answer, replication and proofs.

*Messrs. Grey & Archer,* for the complainant.

*Mr. Wilfred B. Wolcott* and *Mr. Isaac W. Carmichael,* for the defendant.

WALKER, V. C.

The bill prays that it may be decreed that the portion of the lands at Island Heights in this state, called "Camp Ground," the title to which is in the defendant company, shall remain open and devoted to the purposes for which it was originally dedicated, and, incidentally, that the defendant may be forever enjoined from erecting any fence or other structure upon the premises inconsistent with the user of the same as a "camp ground."

On June 1st, 1878, sundry persons associated themselves into a corporation under the name of "Island Heights Association" under the provisions of an act entitled "An act to encourage the improvement of real property in this state," approved March 24th, 1874. On July 1st, 1878, the association purchased about

one hundred and sixty-eight acres at Island Heights, New Jersey, and obtained conveyances therefor. Afterwards it purchased another tract, and the whole was laid out and a map made of it labeled:

"Property of the Island Heights Association, on the North Bank of Toms River, in Ocean County, New Jersey, scale 100 feet to an inch. A. P. Irons, Surveyor, Toms River, New Jersey, 1878."

Copies of this map were spread broadcast, and sales were made of lots with reference to that map. The operation was one of at least a semi-religious character and was projected by the denomination known as Methodists and was intended as a Methodist camp meeting resort. The map appears not to have been filed.

In 1881 another map was made by the association and labeled: "Map of Island Heights, Ocean County, New Jersey." On both these maps a portion of the land of the association was marked "Auditorium," and an auditorium building was erected there some time during the early 80's and was removed in 1904 or 1905. On Sunday, August 13th, 1878, the first "camp meeting" was held upon the grounds, and it was announced in the sermon that the place would always be devoted to camp meeting services. This announcement was frequently repeated at services and on other occasions.

The complainant is the owner of two lots on the tract in question and derives his title mediately from the association, one lot having been conveyed by the association to Alexander C. Graw, September 30th, 1886, who conveyed the same to Jacob Graw, October 7th, 1886, who conveyed the same to the complainant May 19th, 1890, and the other having been conveyed by the association to James L. Hayes, July 31st, 1886, who conveyed the same to the complainant September 17th, 1887. Before complainant made his first purchase in 1887 he spent the summer at Island Heights and heard announcement made from the pulpit in the auditorium that the open space there (at the auditorium) was to be a "camp ground." The ground remained open and no attempt was ever made to enclose it until the summer of 1907. In 1886 a revised map was made which was filed in 1888. Its

lines were in many particulars a considerable departure from those in the map of 1881, but this last map also showed the "camp meeting" or auditorium space, though contracted somewhat from its former dimensions. The complainant saw the revised map before making his purchases, and heard statements made by members of the association to the effect that the camp ground was to be kept open.

The conveyances from the association to the complainant's predecessors in title contained covenants by the parties of the second part for themselves and their heirs and assigns, that the grants were made and received subject to the rules, by-laws and regulations which might, from time to time, be adopted by the association for the protection, government and control of the camp meetings and other assemblies to be holden within their premises from year to year. The properties came to the complainant subject to these conditions. There was abundant testimony to show that the "camp ground" in its original, and afterwards in its more restricted area, had remained open, unenclosed and unobstructed, except by the auditorium building and a summer house and well which was made upon the premises, and it was free to the use of all persons for outing purposes when not being devoted to religious meetings. Religious services appear to have been discontinued on the "camp ground" in or about the year 1900, and on March 25th, 1901, the land comprising the "camp ground" was conveyed to Ralph B. Gowdy, and on the same day Mr. Gowdy and his wife conveyed a one-half interest in the premises to Louis F. Bodine, and on November 4th, 1903, Messrs. Gowdy and Bodine, together with their wives, conveyed the same premises to the defendant, the Island Heights Hotel and Improvement Company.

The complainant, who has built a cottage upon his lands, relies upon an implied covenant that the "camp ground" or premises, the fee of which is now in the defendant, shall be used only for "camp meeting" purposes, and that it cannot be closed to him as a lot owner upon the association's tract, or his view through and across the same obstructed.

The nature and character of this covenant was under considera-

tion by Vice-Chancellor Stevens in *Forrester and others* (among whom was the complainant in this cause) v. *Island Heights Association and others* (among whom was the defendant in this cause), *62 Atl. Rep. 775,* and it was held on demurrer, that whatever private interests existed in the "camp ground" laid out, mapped and dedicated in the manner set forth in the complainant's bill in that cause, it was unnecessary to define, for whatever rights might be held adversely to the defendants as owners of the fee, the complainant would not be entitled to relief until the defendant threatened to interfere with those rights, a mere transfer of the fee not being an invasion of any of the complainant's rights. Such interference is now alleged and is made the basis of the present suit.

The vice-chancellor took occasion to remark in the *Forrester Case,* at *p. 777:*

"The maps upon which the 'camp ground' is laid out have been recorded, and all the facts connected with the dedication of the 'camp ground' and the creation of all public and private rights therein appear to be matters of public notoriety and largely matters of record."

In *Lennig* v. *Ocean City Association, 41 N. J. Eq. (14 Stew.) 606,* the defendant, a religious camp meeting association, laid out and mapped its seaside property into lots reserving a tier of blocks between Fifth and Sixth streets and extending from the ocean westward, as a "camp ground" for religious services and tenting purposes, and sold to the complainant lots by that map fronting on the blocks so reserved, whereon he erected a summer residence. It was observed by Mr. Justice Dixon, speaking for the court of errors and appeals, at *p. 608:*

"Whenever the owner of a tract of land lays it out into blocks and lots upon a map, and on that map designates certain portions of the land to be used as streets, parks, squares or in other modes of a general nature calculated to give additional value to the lots delineated thereon, and then conveys those lots by reference to the map, he becomes bound to the grantees not to use the portions so devoted to the common advantage otherwise than in the manner indicated."

And, again, at *p. 609:*

"The inquiry now presented therefore must be, not whether the association has dedicated the blocks between Fifth and Sixth streets to public use, but whether it has entered into an implied covenant with the complainant not to use those blocks in the mode now proposed, and has granted to him, as appurtenant to his lots, the benefits to be derived from such restriction. The circumstances lead us to answer this inquiry in the affirmative."

*Bridgewater* v. *Ocean City Railroad Co., 62 N. J. Eq.* (*17 Dick.*) *276,* is a case like the one under consideration. In the *Bridgewater Case* the complainant was the owner of two lots by purchase through an intermediate grantee of the Ocean City Association. There was a dwelling-house on the lots in which he resided with his family. The bill was filed against the railroad company, a subsequent grantee of the association of a strip of land part of a certain tract which, by an implied covenant with the complainant and other purchasers of lots, had been devoted to use as a camp ground and park. The defendant was erecting a passenger station thereon in violation of the covenant to the injury of the complainant, by destroying the attractiveness of the camp meeting ground and making it less desirable as a place of recreation and religious instruction, interfering with the circulation of air and with the view of the park and camp ground. Said Vice-Chancellor Van Fleet, at *p. 289:*

"The space between Fifth and Sixth streets was to be kept open for use as a camp ground and park for religious services, affording a place where large congregations could be assembled in the open air, and protected in tents or temporary structures, with abundant access of light, air and view. Lots, whether near to or remote from the camp ground, were purchased in the expectation that this space should be devoted to the declared use. All purchasers thus acquired a right to have that space used as they had been assured it would be used, for no other than the named purposes. The implied covenant arises for the benefit of all the lots, without regard to their particular locality, in relation to the tract impliedly agreed to be specially kept as an open space."

The defendant contends that even if the facts warrant the conclusion that an implied covenant to keep the camp ground open and to be used only for purposes of recreation and religious exercises exists, nevertheless, the complainant cannot have the advantage of it because his lots lie partly within the territory which was designated as a boulevard on the original map. In 1886 a considerable departure was made in the original plan of lots, and what is called a dividend sale of lots remaining in the association was made to stockholders. As already remarked, a map was made in 1886, but not filed until 1888. This map showed lots platted on the boulevard. This is the map which the complainant saw and is the map with reference to which his predecessors in title, who were stockholders, bought at the dividend sale. If the original owner changed the scheme of avenues upon the premises in question and sold lots upon a portion of the premises formerly laid out and dedicated as an avenue, still reserving the camp ground as such and sold to purchasers lots upon the abandoned avenue, with an implied covenant that the camp ground should remain open and devoted to no other than its original purpose, I fail to see how that fact would give the association, or its subsequent grantee, mediate or immediate, the right to violate that implied covenant as against the owner or owners of such lots. Defendant's counsel has cited no authority for his contention in this regard. He relies upon *DeGray* v. *Monmouth Beach Club House,* 50 *N. J. Eq.* (5 Dick.) 329, 351; *Roberts* v. *Scull,* 58 *N. J. Eq.* (13 Dick.) 405; *Ocean City* v. *Headley,* 62 *N. J. Eq.* (17 Dick.) 338.

These are cases in which it is held that one who himself violates a covenant is without standing to enforce that covenant. They have no application to the case at bar. If the complainant in this case were violating the covenant for keeping the camp ground open, he probably would have no standing to object to the defendant's closing it, but he is doing nothing of the kind. In my judgment, the defendant may not be heard to say that because it sold to the complainant land upon an avenue which had been laid out and dedicated to the public, and because the complainant purchased it, the defendant has a right to close against

the complainant the camp ground which was forever dedicated as an open space for purposes of recreation and religious exercises.

Upon the whole case, I am of opinion that the complainant is entitled to the relief he seeks, and it will be decreed accordingly, with costs.