John R. STRACENER, Charles D. Agnew, Arnold Flynn, John A. Kinard, Richard J. Baines, Sr., John Finley, Jerry Kulikowski, James Donaldson, Ernest Brewer, Horace Uselton, Roy W. Clark, Paul E. Ducker, W.L. Chambers, Jr., Tom Naylor, Jim Crenshaw, Joseph C. Bailey, Thomas Bryant, James T. Reece, Faye R. Johnson, Gary Johnson, and Don Rounsaville, Plaintiffs–Appellees,

v.

Richard BAILEY, Albert Comer d/b/a Comer Construction, and Comer Construction Company, Bob Caldwell, and Toddington Heights, Inc., Defendants–Appellants.

Court of Appeals of Tennessee, Middle Section, at Nashville.

Oct. 22, 1986.

Rehearing Denied Nov. 13, 1986.

Permission to Appeal Denied by Supreme Court Sept. 21, 1987.

Dicken E. Kidwell, Murfreesboro, for plaintiffs-appellees.

Patrick J. McHale and Richard F. La-Roche, Sr., Murfreesboro, for Richard Bailey.

## OPINION

CANTRELL, Judge.

The plaintiffs, all owners of lots in the Toddington Heights Subdivision in Murfreesboro, sued to enjoin the defendant, Richard Bailey, from developing an area referred to on various subdivision plats as a "park" or "future park". The Circuit Court of Rutherford County issued the injunction, calling the references to the park on the plats a restriction on the use of the property. The defendant has appealed.

Prior to 1960, Mineola W. Todd and others owned a large tract of undeveloped land in Murfreesboro. Toddington Heights, Inc. was formed to develop the land as a residential subdivision. The owners conveyed the property to the corporation.

On September 20, 1960, Toddington Heights, Inc. filed a plat captioned "Toddington Heights Section III" in the register's office for Rutherford County. The plat shows a large area divided into lots and streets. On the same plat, but outside of the boundaries of Section III, there is an area called "Todd's Lake" and just below the dam that creates the lake the area in question is referred to as "Future Park."

Toddington Heights Section IV appears on a plat filed May 31, 1961 in the register's office for Rutherford County. This plat also shows the area below the lake labelled "Reserved For Future Park."

In various advertisements published contemporaneously with the development of these subdivisions, the lake and the park are given a prominent place. On Sunday, October 7, 1960, a newspaper advertisement by "Toddington Heights, Inc., Developer", states the following: "Plans for the future include development of a private park and recreation area—exclusive to the residents of Toddington Heights."

The record shows that the residents of Toddington Heights have used the area through the years as a playground or a place to enjoy a walk. The area has remained open and undeveloped.

In August of 1981, Toddington Heights, Inc. conveyed a parcel of property including the park to Albert Comer d/b/a Comer Construction Company. On February 2, 1982, Albert Comer d/b/a Comer Construction Company conveyed the same property to the defendant-appellant Richard Bailey. When Mr. Bailey started to develop the property he encountered opposition from the homeowners in Toddington Heights. After a hearing on the merits, the trial judge enjoined Mr. Bailey from developing the property for any purpose other than a park.

The only issue on appeal is the trial judge's conclusion that the evidence establishes a restriction on the use of the property. We think there can be no doubt that the restriction exists.

Restrictions on the use of property that a court of equity will enforce against a sub-

sequent purchaser with notice of the restriction—called equitable servitudes, equitable easements, quasi-easements, or negative reciprocal easements—are generally traced back to the case of *Tulk v. Moxhay*, 2 Phillips 774, Chancery (1848). There the owner of a tract of land conveyed it in fee to a purchaser who covenanted in the deed that he, his heirs, and assigns would maintain the piece of ground as a "square garden and pleasure ground" for the use of the inhabitants of houses in Leicester Square. The property was conveyed several times until it came into the hands of the defendant who proposed to build on it. The defendant's deed did not contain any restrictions on the use of the property, but he admitted that he had notice of the covenant in the original deed. The Lord Chancellor said:

> "It is said that, the covenant being one which does not run with the land, this court cannot enforce it; but the question is, not whether the covenant runs with the land, but whether a party shall be permitted to use the land in a manner inconsistent with the contract entered into by his vendor, and with notice of which he purchased.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> That the question does not depend upon whether the convenant runs with the land, is evident from this, that if there was a mere agreement, and no covenant, this court would enforce it against the party purchasing with notice of it; for if an equity is attached to the property by the owner, no one purchasing with notice of that equity can stand in a different situation from the party from whom he purchases."

In *Tallmadge v. East River Bank*, 26 N.Y. 105 (1862), the New York Court of Appeals described the significance of equitable servitudes in the following terms:

> "From the facts found by the judge at special term, it appears that when the plaintiff Maxwell and others bought lots in St. Mark's Place of Davis, they were shown the map or plan of St. Mark's Place, showing that the houses on both sides of the Place were to be set back eight feet from the street, and that they bought on the assurance of Davis that that plan should be observed in building on the Place; that the strips of eight feet in width on both sides of the street should not be built, but kept open. It is to be presumed that they would not have bought and paid their money except upon this assurance. It is to be presumed that, relying upon this assurance, they paid a larger price for the lots than otherwise they would have paid. Selling and conveying the lots under such circumstances and with such assurances, though verbal, bound Davis in equity and good conscience to use and dispose of all the remaining lots so that the assurances upon which Maxwell and others had bought their lots would be kept or fulfilled. This equity attached to the remaining lots, so that any one subsequently purchasing from Davis any one or more of the remaining lots, with notice of the equity as between Davis and Maxwell and others, the prior purchasers would not stand in a different situation from Davis, but would be bound by that equity."

In *Land Developers, Inc. v. Maxwell*, 537 S.W.2d 904 (Tenn.1976), our Supreme Court recognized the principles described above in a case involving the division of a large tract into smaller parcels. Each grantee's deed contained the restrictions imposed on the property. The court said:

> "Ordinarily when the owner of the tract of land subdivides it and sells different lots to separate grantees, and puts in each deed restrictions upon the use of the property conveyed, in accordance with the general building, improvement or development plan, such restrictions may be enforced by any grantee against any other grantee. Likewise, the property remaining in the hands of the vendor may also be held in equity to be subject to a servitude so as not to be used in a manner different from that contained in the restrictions."

■ It is true that Land Developers, Inc. involved covenants or restrictions incorporated in the deeds to the original grantees.

In this case the restriction appears on a recorded plat. But that is an immaterial distinction. The weight of authority supports a holding that equitable servitudes may be created by restrictions noted on a plat with reference to which lots are sold. *See Tallmadge v. East River Bank* and *Simpson v. Mikkelsen,* 196 Ill. 575, 63 N.E. 1036 (1902) involving set-back lines; *Freeman v. Island Heights Hotel & Improvement Company,* 75 N.J.Eq. 491, 72 A. 974 (1909) where the plat referred to an area as a "campground", and *Williams Realty Company v. Robey,* 175 Md. 532, 2 A.2d 683 (1938) where the area not subdivided was referred to as a "community beach and park." In each of these cases the court restricted the use of the property to the purposes shown on the plat.

Therefore, we are convinced that by designating the area in question as a "park" on the various plats and selling lots according to the plats, the corporation, Toddington Heights, Inc., created a restriction on the use of the property for any purpose inconsistent with that designation.

The only question remaining is whether that restriction binds Mr. Bailey, a remote grantee. It is well settled that such restrictions do bind remote grantees if the restrictions appear in the grantees chain of title or if the grantee had actual notice of the restriction when he acquired title. *Land Developers, Inc. v. Maxwell,* 537 S.W.2d 904 (Tenn.1976). In *Ridley v. Haiman,* 164 Tenn. 239, 47 S.W.2d 750 (1932), the Supreme Court cited with approval the case of *Sanborn v. McLean,* 233 Mich. 227, 206 N.W. 496 (1925), in which the Supreme Court of Michigan said that when one buys into a high-class neighborhood where there are no business houses, he has a duty to inquire about possible restrictions. Our Supreme Court added, "certainly the purchaser cannot wilfully close his ears and shut his eyes." 47 S.W.2d at 752. Further, our courts have uniformly held that when anything appears which would put a man of ordinary prudence on inquiry, the law presumes that such inquiry was actually made; and whatever is sufficient to put a person upon inquiry is notice of all the facts to which the inquiry will lead when prosecuted with reasonable diligence and in good faith. *Texas Co. v. Aycock,* 190 Tenn. 16, 227 S.W.2d 41 (1950).

In this case any prudent person about to purchase the property in question would, when examining the title to the property, have discovered the deed from Mineola Todd, et al. to Toddington Heights, Inc. conveying the large tract containing the land in question. In order to determine what part of the original large tract had previously been conveyed away by Toddington Heights, Inc., Mr. Bailey would have been led inevitably to the plats of Toddington Heights Sections III and IV. Each of those plats referred to the land in question as a park. Without question Mr. Bailey had notice of the restriction established by his predecessor in title Toddington Heights, Inc. Therefore, the restriction is binding on him.

The judgment of the court below is affirmed and the cause is remanded to the Circuit Court of Rutherford County for any further proceedings necessary. Tax the costs on appeal to the appellants.

TODD, P.J., and LEWIS, J., concur.