IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 20, 2002 Session

## TENNSCO CORPORATION v. ELIAS H. ATTEA, JR.

**Appeal from the Chancery Court for Williamson County**
**No. 27393     R. E. Lee Davies, Judge**

---

**No. M2001-01378-COA-R3-CV - Filed June 13, 2002**

---

This is a complaint to remove a cloud on the title to two parcels of property.  The Chancery Court of Williamson County granted summary judgment to the plaintiff, holding that as a matter of law a restrictive covenant in a prior deed in the plaintiff's chain of title did not run with the land and did not create an equitable servitude.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed and Remanded**

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM C. KOCH, JR. and PATRICIA J. COTTRELL, JJ., joined.

James A. Freeman, III, Richard H. Sforzini, Jr., and Talmage M. Watts, Nashville, Tennessee, for the appellant, Elias H. Attea, Jr.

Coburn Dewees Berry and Kim B. Watson, Nashville, Tennessee, for the appellee, Tennsco Corporation.

## OPINION

In 1988, Larry H. Daugherty and wife, Patricia R. Daugherty, owned a large tract of land in Williamson County north of the Cool Springs Shopping Center.  The Daughertys lived in an historic home approximately in the center of the property.  In February of 1988, they conveyed the property north and south of their home to Bill Wills, effectively dividing the property into three parts.  The warranty deed to Mr. Wills contained the following restriction:

> This conveyance is made subject to the restriction that any buildings constructed on the land shall be single family dwellings of traditional design at least 4,000 square feet in size and on lots of one (1) acre or greater in size.

In December of 1988, Mr. Wills quit-claimed the property to Mallory Park, L.P., subject "to all restrictions, easements and encumbrances or (sic) record." In February of 1989, Mallory Park gave a deed of trust to Tennsco Corporation (Tennsco) to secure a loan. In 1994, Mallory Park defaulted on the loan and conveyed the property to Tennsco by warranty deed in lieu of foreclosure. The warranty deed did not contain any restrictions on the use of the property.

In 1993, the Daughertys conveyed their home and the surrounding property unrestricted to Gerald and Carolyn Butters. In 1994, the Butters conveyed the property unrestricted to the defendant, Elias H. Attea, Jr. The complaint in this case, however, alleges that Mr. Attea insists on enforcing the restriction contained in the Daughertys' deed to Wills. Mr. Attea's answer admits that allegation. The Chancery Court of Williamson County held that the restriction did not run with the land, and removed the restriction as a cloud on Tennsco's title.

## II.

Private owners of property in Tennessee may restrict the use of the property, not only for the present but also when the property passes into the hands of subsequent purchasers. The law does not favor such restrictions because they interfere with the free and unrestricted enjoyment of the property. *Lowe v. Wilson*, 250 S.W.2d 366 (Tenn. 1952). Nevertheless the courts will uphold covenants running with the land "where the intent of the parties to bind their remote successors can be determined by the language of the covenant and the circumstances of its making." *Hillis v. Powers*, 875 S.W.2d 273 at 275 (Tenn. Ct. App. 1993).

Restrictions that bind remote grantees are sometimes called "real covenants" at law and "equitable servitudes" or "reciprocal negative easements" in equity. *Land Developers, Inc. v. Maxwell*, 537 S.W.2d 904 (Tenn. 1976). As students of the differences between law and equity might expect, the requirements allowing a covenant to "run with the land" at law were more technical and specific than the requirements imposed by courts of equity. Some of the differences are discussed at 5 Powell & Rohan, *The Law of Real Property* § 673 (1991):

> Different requirements have developed for the running of real covenants and the running of equitable restrictions. The elements most often said to be required for covenants to run at law are that: (1) the covenant "touch and concern" the land; (2) the original covenanting parties intend the covenant to run; and (3) there be some form of privity of estate. A fourth requirement, that the covenant be in writing, is also sometimes mentioned. For covenants to run in equity, courts require that; (1) the covenant "touch and concern" the land; (2) the original covenanting parties intend the covenant to run; and (3) the successor to the burden have "notice" of the covenant.

## A. A REAL COVENANT

As to what covenants "touch and concern" the land there seems to be no universal test, *see* 2 *American Law of Property* § 9.13 (A.J. Casner ed. 1952), but covenants containing building restrictions, entered into between owners in fee, are almost universally held to satisfy the "touch and concern" requirement – both as to the burden and the benefit. *Id.* Therefore, we are satisfied that this restriction touches and concerns the land.

As to the intent requirement, the courts in Tennessee have given conclusive effect to the language in the deed. If the covenant does not specifically bind the heirs and assigns of the grantees, the covenant cannot be held to run with the land. *Lowe v. Wilson*, 250 S.W.2d 366 (Tenn. 1952). While this result has been criticized, *see* Case Comment, 22 Tenn. L. Rev. 971 (1953), this court has consistently followed the rule, and the Supreme Court so far has refused to review it. *See Essary v. Cox*, 844 S.W.2d 169 (Tenn. Ct. App. 1992). In *Hillis v. Powers*, 875 S.W.2d 273 (Tenn. Ct. App. 1993), we held that the covenant could be enforced against remote grantees where it purported to bind the grantees' "assigns" only, but we think that the rule requiring specific language in the deed remains intact.[1]

Therefore, the restriction in the deed from Daugherty to Wills did not run with the land.

## B. EQUITABLE SERVITUDE

As we have indicated, courts of equity have enforced restrictions on the use of property that would not have been considered real covenants at law. As one leading treatise has put it:

> [w]here an owner of land enters into a contract that he will use or abstain from using his land in a particular way or manner, equity will enforce the agreement against any purchaser or possessor with notice who attempts to use the land in violation of its terms, irrespective of whether the agreement creates a valid covenant running with the land at law or not.

2 *American Law of Property* § 9.24 (A.J. Casner ed. 1952). *See Tulk v. Moxhay*, 2 Phillips 774, 41 Eng. Rep. 1143 (ch. 1848).

It results that grantees seeking to enforce reciprocal negative easements are not necessarily limited to the recitals in their deeds. They may, of course, rely on their deeds and other deeds from a common grantee, *Land Developers, Inc. v. Maxwell*, 537 S.W.2d 904 (Tenn. 1976), they may also rely on recorded plats, *Stracener v. Bailey*, 737 S.W.2d 536 (Tenn. Ct. App. 1986), or even on parol evidence of the circumstances surrounding the purchase of the property. *Ridley v. Haiman*, 47

---

[1] The appellant correctly points out that other courts have applied the rule we have adopted in this state only to covenants that concern things not in esse. This also appears to be the correct interpretation of the second rule in *Spencer's Case*, 5 Coke 16a (Q.B. 1583), but our courts have not made that distinction.

S.W.2d 750 (Tenn. 1932); *Owenby v. Boring*, 276 S.W.2d 757 (Tenn. Ct. App. 1954). The one essential, that the one charged with the burden of the restriction have notice of it, may be also shown by circumstantial evidence. *Ridley v. Haiman*, 47 S.W.2d 750 (Tenn. 1932).

Equitable servitudes are not favored, however, for the same reason that other restrictive covenants are not favored. *Land Developers, Inc. v. Maxwell*, 537 S.W.2d 904 (Tenn. 1976). They should be enforced with extreme caution. *Id.* It is in accord with this reluctance to restrict the use of property – for an indefinite period of time – that the Supreme Court said in *Land Developers* that the common grantor must have imposed the restrictions on the use of the property in furtherance of a scheme or plan of development so that each grantee may enforce the restrictions against any other grantee. 537 S.W.2d at 912-913. Therefore, in order to enforce an equitable servitude or a reciprocal negative easement it must appear that the grantor had in mind a general plan of development and intended for the restrictive covenant to benefit all the property involved. *Ridley v. Haiman*, 47 S.W.2d 750 at 755 (Tenn. 1932). In *Essary v. Cox*, 844 S.W.2d 169 (Tenn. Ct. App. 1992), we said:

> "[o]utside the context of restrictions which evidence a common development plan, however, plaintiffs have cited no authority in this jurisdiction for the proposition that restrictive covenants may be imposed on remote grantees based upon their knowledge of the existence of a prior restriction."

844 S.W.2d at 172. The Court thus distinguished *Stracener v. Bailey*, 737 S.W.2d 536 (Tenn. Ct. App. 1986) and *Owenby v. Boring*, 276 S.W.2d 757 (Tenn. Ct. App. 1954), both of which held that the reciprocal negative easements were enforceable. Both cases involved a common plan of development.

We think the undisputed facts show that there was no general plan or scheme of development adopted to cover the property held by the Daughertys. As the trial judge observed there was no map or sales brochures showing the restrictions. And there is no restriction on the property the Daughertys retained. When they conveyed the property to the Butters they did not include any restrictions. Since, there was no reciprocal easement, the conclusion is inescapable that the restriction placed in the Wills deed was personal to the Daughertys.

The judgment of the trial court is affirmed and the cause is remanded to the Chancery Court of Williamson County for any further proceedings necessary. Tax the costs on appeal to Elias H. Attea, Jr.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.