IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 27, 2013 Session

## MICHAEL T. and DANA N. BERNIER v. ROBERT ("SHAWN") and JAMIE MORROW

**Direct Appeal from the Circuit Court for Sumner County**
**No. 2011CV234    C.L. Rogers, Judge**

---

**No. M2012-01984-COA-R3-CV - Filed April 26, 2013**

---

This case presents the question of whether certain notes on a final subdivision plat constitute restrictive covenants, which prevent the purchasers of property in the subdivision from installing an experimental wetland sewage disposal system on their property or on an easement for the benefit of their property. The trial court concluded that the plat notes constitute restrictive covenants preventing the installation, and permanently enjoined the purchasers from installing or constructing such a system on their own property or on the easement. We affirm and remand.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J.,W.S., and HOLLY M. KIRBY, joined.

Philip C. Kelly and Gwynn K. Smith, Gallatin, Tennessee, for the appellants, Robert ("Shawn") and Jamie Morrow.

William L. Moore, Jr., Gallatin, Tennessee, for the appellees, Michael T. and Dana N. Bernier.

**OPINION**

**I. Background**

The Plaintiffs/Appellees Michael T. ("Shawn") Bernier and Dana Bernier (together, "the Berniers" or "Appellees") own certain lake-front property on Odoms Bend Road in Gallatin, Tennessee. In 2009, the Berniers subdivided the property pursuant to a Final

Subdivision Plat ("Final Subdivision Plat" or "Plat") recorded in the Plat Book in the Register's Office for Sumner County, Tennessee. The Bernier's home sits on Lot #1 of the property. The Berniers conveyed Lot #2 to the Defendants/Appellants Robert Shawn Morrow and Jamie Morrow (together, "the Morrows" or "Appellants"). The transfer from the Berniers to the Morrows was made pursuant to a warranty deed of record, which was also recorded in the Register's Office for Sumner County, Tennessee. The warranty deed states, in pertinent part:

> Being Lot No. 2 on the Final Subdivision Plat for Michael T. Bernier and wife, Dana N. Bernier, a plat of which is of record in Plat Book 26, page 208, Register's Office of Sumner County, Tennessee, to which reference is hereby made for a more complete description of said lot.

The Final Subdivision Plat Notes referenced in the deed state, in pertinent part:

> 11. A portion of lot #3 shown is to be used for the subsurface sewage disposal of lot #2, as shown in the respective easement provided.
>
> * * *
>
> 14. The shaded areas are reserved for the installation of the subsurface sewage disposal system. . . .
>
> 15. Lot #2 is approved for a maximum three (3) bedroom residence with use of a conventional subsurface sewage disposal system.

In order to build a home on the property, a sewage system was required. However, the soil conditions of Lot #2 proved unsuitable for the installation of a conventional subsurface sewage disposal system. Accordingly, the Berniers conveyed to the Morrows a subsurface sewage disposal easement for the use and benefit of Lot #2. The easement was located on a portion of Lot #3, which the Berniers also owned. The Morrows sought, and obtained from the Tennessee Department of Environment and Conservation Division of Ground Water Protection ("TDEC") a permit to install an underground low pressure pipe sewage system ("low pressure system") on Lot #3. The low pressure system was installed and is presently in use by the Morrows for the benefit of Lot #2. The TDEC further required that the land be suitable for a secondary system, should the need for one ever arise. However, during installation of the primary system, it was determined that the soil in the

area was unsuitable for the secondary low pressure system. Accordingly, the Morrows sought and obtained from the TDEC permission to install an experimental wetland sewage disposal system for use as the secondary waste disposal system for Lot #2.

To prevent the installation of the wetland sewage disposal system, on March 2, 2011, the Berniers filed a Complaint and Application for Temporary Restraining Order in the Sumner County Circuit Court. The Berniers argued that the wetland sewage disposal system was in violation of the restrictive covenants contained on the Final Plat. The Berniers asserted that these restrictive covenants required the Morrows to install a "conventional," "subsurface" sewage system. The Berniers attached to their complaint a letter from Mark Dew, a Certified Tennessee Soil Consultant. In his letter, Mr. Dew stated that the experimental wetland system sought by the Morrows was not a subsurface system because a portion of the system was above ground. In addition, Mr. Dew noted that, without proper maintenance, wetland systems can cause odors and above ground exposure to wastewater.

The trial court granted the Berniers' request for an emergency temporary restraining order on March 2, 2011. A hearing was scheduled to determine whether a temporary injunction should be granted on March 9, 2011. In advance of the temporary injunction hearing, on March 8, 2011, the Bernier's filed a Memorandum of Law in support of their position. In the Memorandum, the Berniers' again argued that the wetland system was not a "subsurface" system as required by the Final Subdivision Plat.

On March 11, 2011, the Berniers amended their complaint to add a cause of action for breach of other subdivision restrictions, as well as to name Phillip D. Dickerson as a defendant to the action. Mr. Dickerson created a map of the area that erroneously stated that the area was suitable for a secondary low pressure system. The complaint was later amended to remove Mr. Dickerson as a defendant and the Berniers' claim against him was non-suited. On March 23, 2011, the trial court entered an order enjoining the Morrows from constructing the wetland sewage system and requiring the Berniers to pay a bond in the amount of $1,000.00.

On March 31, 2011, the Morrows filed an answer to the Berniers' complaint. In their answer, the Morrows denied that the wetland sewage system was above ground, but asserted that it was, in fact, a subsurface sewage system. In addition, the Morrows denied that Mr. Dew was competent to testify as to an experimental wetland sewage system because he admitted he had only encountered one such system throughout his career. On May 5, 2011, the Morrows also sought leave to file a third-party complaint against Mr. Dickerson. On the same day, the trial court entered an agreed order allowing the third-party complaint. The Morrows subsequently filed their complaint, which alleged that Mr. Dickerson was negligent in mapping the area.

On May 16, 2011, the Berniers filed a second motion for a Temporary Injunction. This motion sought an injunction to prevent the Morrows from constructing an experimental wetland sewage disposal system on Lot #2, the lot the Berniers had conveyed to the Morrows for construction of a home. The Berniers raised the additional argument that the Final Subdivision Plat Notes specifically require that the sewage system be "conventional," and argued that an experimental wetland sewage system does not meet that requirement.

The Morrows filed a response to the motion on May 19, 2011, agreeing that they had been approved by the TDEC to install a wetland system on their own lot, Lot #2, but denying that the Final Subdivision Plat in any way restricted their ability to do so.

On May 24, 2011, the Morrows filed a counter-complaint against the Berniers, alleging that they had suffered damages for breach of warranty, negligence and intentional and negligent misrepresentation from the Bernier's refusal to consent to the Morrows constructing the needed secondary sewage system on their easement and their own lot, as well as by failing to ensure that the soil in the property conveyed to them was suitable for the stated purpose of the lot, i.e., to build a three-bedroom home with a sewage system. On June 7, 2011, the Berniers filed an answer to the counter-complaint, denying the material allegations contained therein. On the same day, the Berniers also filed a cross-claim against third-party defendant Mr. Dickerson. The Morrows were later allowed to amend their counter-complaint against the Berniers to include more specific factual allegations.

On October 19, 2011, Mr. Dickerson filed a Motion for Summary Judgment, arguing that it was undisputed that he prepared the soil map in accordance with the recognized standard of professional care for those in his field. The Morrows responded with an affidavit from a licensed soil scientist, who opined that Mr. Dickerson's conduct fell below the recognized standard of care. Eventually, the Morrows voluntarily dismissed their claim against Mr. Dickerson and Mr. Dickerson obtained summary judgment in his favor with regard to the Berniers' claim. The Berniers do not appeal this ruling. Thus, Mr. Dickerson is not a party to this appeal.

On March 19, 2012, the Berniers again amended their complaint to add a claim of anticipatory nuisance and to clarify their other claims. On June 1, 2012, the Morrows filed a Motion for Summary Judgment based on the Bernier's alleged failure to state a claim upon which relief may be granted. Attached to the motion was the affidavit of the Director of the TDEC, Britton Dotson, who stated that an experimental wetland sewage system is, in fact, a subsurface system. On August 1, 2012, the trial court granted partial summary judgment in favor of the Morrows, concluding that the Berniers failed to state a claim with regard to

the express subdivision restrictions of record or the anticipatory nuisance claim.[1] Accordingly, the Bernier's only remaining claim involved the implied restrictive covenants allegedly created by the Final Subdivision Plat.

The trial court held a bench trial on the Bernier's one remaining issue, as well as the Morrow's counter-claim, on July 30, 2012. At trial, the Morrows gave oral notice of their intent to voluntarily dismiss their counter-claim. On August, 7, 2012, the trial court entered an order voluntarily dismissing the Morrows' counter-claim against the Berniers. On August 9, 2012, the trial court entered a final order granting the Bernier's a permanent injunction preventing the Morrows from constructing an experimental wetland sewage system on either Lot #2, or on the easement on Lot #3, unless and until the Berniers agree to amend the Final Subdivision Plat. In the trial court's oral findings, incorporated into the final order by reference, the trial court stated, in pertinent part:

> Now, the subdivision plat, the representation, the deed of [the Morrows] all have a condition in there that the subsurface sewage disposal system indicated lot two is approved naturally for a three bedroom residence with the use of a conventional subsurface sewage disposal system.
> The Court finds that this wetland experimental system is not, based on the prior testimony of the State, also the descriptions of these systems, is not a conventional subsurface sewage disposal system. And then it states that a portion of lot three, again plat condition, is to be used for a subsurface sewage disposal system. . . . That's what everybody thought they were going to get, and refers to it as subsurface sewage disposal easement for the benefit of lot two.
> The plat is applicable to lot two, the deed is. It's a condition set out. It can only be changed in the Court's opinion by the owner of lot three, which remains [the Berniers] . . . .

Thus, the trial court held that the Notes on the Final Subdivision Plat created a restrictive covenant that any sewage disposal system installed for the benefit of Lot #2, either on Lot #2, or on the easement on Lot #3, be conventional, and further held that the proposed wetland sewage disposal system, being experimental, did not meet that requirement. The Morrows appeal.

## II. Issues Presented

---

[1] The Berniers do not appeal the trial court's summary dismissal of these claims.

The Morrows raise two issues for review, as slightly restated from their brief:

1.      Whether the plat notes on the Berniers' subdivision plat or the easement on Lot #3 amount to restrictive covenants, which prohibit the Morrows' installation of a wetland sewage disposal system on their easement?

2.      Even if the subdivision plat notes are construed as restrictive covenants, whether the covenants go so far as to bar the Morrows from constructing a wetland sewage disposal system on their own lot, Lot #2?

In their brief, the Berniers also seek damages for a frivolous appeal.

### III. Standard of Review

This case was tried by the trial court without a jury. We review the trial court's findings of fact *de novo* with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). No presumption of correctness, however, attaches to the trial court's conclusions of law and our review is *de novo*. **Blair v. Brownstone**, 197 S.W.3d 681, 684 (Tenn. 2006) (citing **Bowden v. Ward**, 27 S.W.3d 913, 916 (Tenn. 2000)). The issues in this case involve the existence and construction of restrictive easements. "The construction of restrictive covenants, like other written contracts, is a question of law." **Massey v. R.W. Graf, Inc.**, 277 S.W.3d 902, 908 (Tenn. Ct. App. 2008) (citing **Maples Homeowners Ass'n, Inc. v. T & R Nashville Ltd. P'ship,** 993 S.W.2d 36, 38–39 (Tenn. Ct. App. 1998)).

### IV. Analysis

In this case, the Morrows argue that the trial court erred in concluding that a restrictive covenant exists preventing them from installing a wetland sewage disposal system on their easement on Lot #3 or on their own lot, Lot #2. The dispute concerns whether the Notes on the Final Subdivision Plat constitute restrictive covenants on the use of the property, and if so, whether those restrictive covenants prevent the installation of a wetland sewage disposal system. We begin first with a discussion of whether the Notes on the Final Subdivision Plat constitute restrictive covenants.

The Restatement (Third) of Property defines a "restrictive covenant" as " a negative covenant that limits permissible uses of land." Restatement (Third) of Property (Servitudes) § 1.3 (2000). Tennessee courts have recognized and enforced implied restrictive covenants under certain circumstances. *See generally* **Stracener v. Bailey**, 737 S.W.2d 536 (Tenn. Ct.

-6-

App. 1986). As explained by the Tennessee Supreme Court:

> Ordinarily when the owner of the tract of land subdivides it and sells different lots to separate grantees, and puts in each deed restrictions upon the use of the property conveyed, in accordance with the general building, improvement or development plan, such restrictions may be enforced by any grantee against any other grantee. Likewise, the property remaining in the hands of the vendor may also be held in equity to be subject to a servitude so as not to be used in a manner different from that contained in the restrictions.

*Land Developers, Inc. v. Maxwell*, 537 S.W.2d 904, 912 (Tenn. 1976). It is undisputed that no restrictive covenants are recorded on the deed conveying Lot #2 to the Morrows. It is well-settled, however, that "[r]estrictive covenants may be implied by reference to a plat." *Hughes v. New Life Development Corp.*, 387 S.W.3d 453, 484 (Tenn. 2012); *see also Stracener*, 737 S.W.2d at 539 ("The weight of authority supports a holding that equitable servitudes may be created by restrictions noted on a plat with reference to which lots are sold."). Thus, "a plat may be utilized in establishing implied restrictive covenants if the deed of the party seeking to impose the restriction refers to the plat." *Arthur v. Lake Tansi Vill., Inc.*, 590 S.W.2d 923, 929 (Tenn. 1979). "A deed and the plat which includes the property granted must be read together, and whatever appears on the plat is to be considered as a part of the deed." 20 Am. Jur. 2d Covenants, Etc. § 161.

As discussed above, the deed in this case specifically references the Plat, noting that reference to the Plat "is hereby made for a more complete description of said lot." The Morrows, however, point to the affidavit of Carroll Carman, the Tennessee Licensed surveyor who drew the Final Subdivision Plat, to argue that the Notes contained therein were not intended as restrictive covenants. In his affidavit, Mr. Carman stated that the Notes on the Plat referring to the "conventional subsurface sewage system" were placed on the map for descriptive purposes and to satisfy TDEC rules. According to the Morrows, Mr. Carman's affidavit shows that the Plat Notes were not "intended to mandate, nor did [they] serve to mandate, the specific type of sewage disposal system that may ultimately be permitted." The Morrow's reliance on this parol evidence, however, is misplaced without some finding of ambiguity in the plain language of the Plat. Instead, this Court must apply the well-settled rules of contract interpretation:

> Rules governing the construction of covenants imposing restrictions on the use of land are generally the same as those applicable to any contract or covenant, including the rule that

-7-

where there is no ambiguity in the language used, there is no room for construction, and the plain meaning of the language governs. Primarily, the question is one of intention, subject to the further principle that restrictive covenants are strictly construed in favor of the free use of property.

20 Am. Jur. 2d Covenants, Etc. § 168 (footnotes omitted). As recently explained by this Court:

Because the instant case involves the interpretation of restrictive covenants, we apply well-established rules of construction and law in order to construe the terms of the covenants. *Parks v. Richardson*, 567 S.W.2d 465, 467 (Tenn. Ct. App. 1977). . . . Thus, if the "meaning of the covenant is reasonable and unambiguous, there is no need to seek further clarification outside its language." *Shea v. Sargent*, 499 S.W.2d 871, 874 (Tenn. 1973). If the language of the restrictive covenant is unambiguous, and its plain meaning is fair and reasonable, then its terms may not be altered or varied by parol evidence. *Hicks*, 978 S.W.2d at 547–48 (citations omitted). However, if [parol evidence is] needed, then we would also interpret [the covenants] in compliance with the well-established rules governing interpretation of other written contracts, where the primary goal is to ascertain the intention of the parties as expressed by the language of the document itself. *See Hicks v. Cox*, 978 S.W.2d 544, 547 (Tenn. Ct. App. 1998). The words of a contract must be given their usual and ordinary meaning. *Hicks*, 978 S.W.2d at 547 (citing *Aldridge v. Morgan*, 912 S.W.2d 151, 153 (Tenn. Ct. App. 1995); *Rainey v. Stansell*, 836 S.W.2d 117, 119 (Tenn. Ct. App. 1992)).

*Grand Valley Lakes Property Owners Ass'n, Inc. v. Burrow*, 376 S.W.3d 66 (Tenn. Ct. App. 2011); *see also* 20 Am. Jur. 2d Covenants, Etc. § 169 (noting that the surrounding circumstances are only "taken into consideration in determining the intention in some cases, where it is necessary to do so by reason of the uncertainty or ambiguity in the language giving rise to the restriction").

From our review of the Final Subdivision Plat, we must conclude that the Plat Notes unambiguously create restrictive covenants in this case. As previously noted, a restrictive covenant is a covenant or agreement that restricts the use of the land. The Notes on the

Subdivision Plat contain clear restrictions on the use of the land, including limiting construction on easement areas, requiring compliance with applicable performance standards and subdivision regulations, and, importantly, reserving an easement on an area of the property contained on the Plat for the installation of the subsurface sewage disposal system for the benefit of Lot #2. Indeed, the Morrows do not dispute that the easement was conveyed to them solely as a result of the drawings and Notes contained on the Final Subdivision Plat. It would be unreasonable to conclude that the other Notes contained on the Plat do not also operate to affect the property at issue or bind the parties. Further, we note nothing in the plain language of the Final Subdivision Plat or the warranty deed to disregard the well-settled rule that Notes to a subdivision plat may be considered restrictive covenants on the use of the property.

Indeed, from our research, none of the cases in which Tennessee Courts have concluded that Plat Notes do not constitute restrictive covenants are analogous to the present case. For example, in *Arthur v. Lake Tansi Village, Inc.*, the Tennessee Supreme Court affirmed the Court of Appeals's ruling that a plaintiff was not entitled to rely on certain recorded plats when: (1) the plats at issue were not included as a part of the record on appeal; and (2) the plats relied on by the plaintiff did not include the plaintiffs own property and, thus, were not incorporated by reference into the plaintiff's deed of conveyance. *Arthur*, 590 S.W.2d at 929. In a recent case, the Tennessee Supreme Court likewise concluded that no restrictive covenants limiting development of portions of a subdivision to forest preserves were created by the notes on the subdivision plat because the plat notes that allegedly contained the mention of the preserves were illegible. *See Hughes*, 387 S.W.3d at 483–4. As explained by the Supreme Court:

> [T]he 2002 plat in this case bears no legible reference to forest preserves. Sheets 2 through 5, which contain no illegible writing, contain no reference whatsoever to forest preserves. Sheet 1 contains virtually no legible writing with respect to the tract, and not surprisingly contains no legible reference to an East Preserve or a West Preserve. Thus, having examined all five sheets comprising the 2002 plat, we can only conclude that the 2002 plat does not clearly designate an East Preserve or a West Preserve . . . .

*Id.* at 484. In this case, however, the Final Subdivision Plat contains clearly legible restrictions on the use of the property and contains a clear reference to the property owned by the Morrows. There is no dispute that the Morrows had notice of the Notes on the Final Subdivision Plat prior to the conveyances at issue. In addition, the Plat is clearly referenced in the deed of conveyance. Thus, we must conclude that the Notes on the Final Subdivision

Plat at issue unambiguously place restrictive covenants on the use of land contained therein (i.e., Lot# 2 and Lot #3). We next turn to consider whether the restrictive covenants at issue operate to bar construction of the proposed wetland sewage disposal system on both Lot #2 and Lot #3.

The Morrows argue that even if the Plat Notes are considered restrictive covenants, a proper construction of the Notes does not prevent the installation of a wetland sewage disposal system on either the easement on Lot #3, or on their own property, Lot #2. As previously discussed, the construction of a restrictive covenant is a question of law. In construing restrictive covenants, however, we must keep in mind that: "[b]ecause restrictive covenants are in derogation of the fundamental right of free use and enjoyment of real property, they are not favored under Tennessee law." *Massey*, 277 S.W.3d at 908 (citing *Williams v. Fox*, 219 S.W.3d 319, 324 (Tenn. 2007)). As explained by this Court:

> Restrictive covenants are strictly construed. *Arthur* [*v. Lake Tansi Vill., Inc.*, 590 S.W.2d 923, 927 (Tenn. 1979)].
> Any doubt concerning the applicability of a restrictive covenant will be resolved against the restriction, *Richards v. Abbottsford Homeowners Ass'n*, 809 S.W.2d 193, 195 (Tenn. Ct. App. 1990) and, likewise, any ambiguity in the terms of the restrictive covenant will be resolved against the restriction. *Parks v. Richardson*, 567 S.W.2d 465, 467–468 (Tenn. Ct. App. 1977). Similarly, when the terms of a covenant may be construed more than one way, the courts must resolve any ambiguities against the party seeking to enforce the restriction and in a manner which advances the unrestricted use of the property. *Hillis v. Powers,* 875 S.W.2d 273, 275–76 (Tenn. Ct. App. 1993); *Parks*, [567 S.W.2d] at 468.

*Massey*, 277 S.W.3d at 908. However,

> [s]uch construction in favor of the unrestricted use . . . must be reasonable. The strict rule of construction as to restrictions should not be applied in such a way as to defeat the plain and obvious purposes of a restriction, nor will the rule of strict construction render covenants unenforceable. Similarly, the rule that a deed must be construed most strictly against the grantor has no application where in the light of the surrounding circumstances the meaning of the language of the deed is plain.

20 Am. Jur. 2d Covenants, Etc. § 170 (footnotes omitted).

As previously discussed, we first turn to the language of the restrictive covenants at issue. In pertinent part, the Notes on the Final Subdivision Plat state:

> 11. A portion of lot #3 shown is to be used for the subsurface sewage disposal of lot #2, as shown in the respective easement provided.
>
> * * *
>
> 14. The shaded areas are reserved for the installation of the subsurface sewage disposal system. . . .
>
> 15. Lot #2 is approved for a maximum three (3) bedroom residence with use of a conventional subsurface sewage disposal system.

The Berniers argue that Note 15's statement that Lot #2 is approved for a home with a conventional subsurface sewage system amounts to a requirement that any home built on Lot #2 use only a conventional subsurface sewage system. It is undisputed that the wetland sewage disposal system sought by the Morrows is an experimental, rather than a conventional system.[2] Accordingly, the Berniers argue that the wetland sewage disposal system is prohibited pursuant to the restrictive covenants above. The Berniers rely on the case of *Stracener v. Bailey*, 737 S.W.2d 536 (Tenn. Ct. App. 1986) to support their position. In *Stracener*, the defendant-developer subdivided a large tract of land pursuant to a subdivision plat, which was filed with in the county register's office. The plat contained an area that was marked as a "future park." The plaintiffs purchased one of the subdivided lots. When the developer moved to develop the property marked as a future park into more residences, purchasers of certain subdivided property sued to enjoin the defendant-developer from developing the area into anything but a park. *Id.* at 537. The dispositive question in the

---

[2] The trial court, in its findings of fact and conclusions of law, made an express finding that the wetland sewage disposal system was not a conventional system based on the testimony of TDEC Director Dotson. Mr. Dotson testified that a wetland system is an experimental system and does not qualify as a conventional system. Nothing in the record preponderates against this finding, nor do the Morrows appear to take issue with the trial court's conclusion. Indeed, Tennessee Compiled Rules and Regulations 1200-01-06-.16 defines an experimental sewage system as one "in lieu of those provided herein," such as the conventional systems defined by Tennessee Compiled Rules and Regulations 1200-01-06-.02 (""Conventional Subsurface Sewage Disposal System" means a disposal system that pre-treats sewage by use of a septic tank and applies effluent to the soil as described in Rule 1200-01-06-.07.").

case was whether the note on the plat, marking the area as a "future park," was sufficient to create a restriction on the use of the property for anything other than a park. The Court of Appeals concluded that the note on the recorded plat, designating the area as a future park, was sufficient to create a restrictive covenant preventing the area at issue from being developed into anything other than a park. *Id.* at 538–39. In *Stracener*, the restrictive covenant at issue did not contain a negative limitation (e.g., this property may not be used for residential purposes), but rather contained an affirmative restriction on the use of the property by expressly naming the future use (i.e., a future park). *Id.* Thus, the Court of Appeals concluded that an express designation as to what use the property may be put created a restriction on the land against any use that was inconsistent with that restriction. *Id.* Similarly, in this case, the Berniers argue that the Plat Note approving Lot #2 for a conventional subsurface sewage system is a restrictive covenant, which prevents the Morrows from installing any sewage system that does not meet that requirement, i.e. a non-conventional system.

In contrast, the Morrows contend that the trial court interpreted Note 15 on the Final Subdivision Plat "too narrowly" in concluding that it required the use of a "conventional subsurface sewage system," to the exclusion of all other types of systems. The Morrows argue that because the construction of the wetland system is consistent with the purpose of the easement, to allow the Morrows to build a home on Lot #2 with an adequate, state-approved sewage system, the trial court erred in enjoining the Morrows from doing so. The Morrows rely on two Tennessee Supreme Court cases to support their contention that preventing their installation of the wetland sewage disposal system is to unreasonably expand, by implication, the restrictive covenants contained on the Final Subdivision Plat. First, in *Turnley v. Garfinkel*, 362 S.W.2d 921 (Tenn. 1962), the Tennessee Supreme Court held that an express restriction that "[n]ot more than one dwelling be built on any lot" did not operate to bar a property owner from re-subdividing his own lot into two, thereby allowing two homes to be built on the original lot. The Supreme Court explained:

> Since the covenants in this case contain no express restriction against a resubdivision of any of the lots, they cannot be extended by implication to prevent complainants' re-subdivision of their lot. Nor can such restriction be implied from the conveyance of these lots with reference to this recorded plat showing the dimensions of the lots.
> While we have no decision upon this particular point, we think it is generally well settled on principle and authority, which we deem sound and are content to follow, that such a conveyance of the lots by reference to a recorded plat raises no implied covenant that the lots shall remain as shown on the

map, or that they may not later be subdivided.

*Id.* at 923. In a more recent case, ***Williams v. Fox***, 219 S.W.3d 319 (Tenn. 2007), the Tennessee Supreme Court likewise held that a covenant restricting the construction or installation of "mobile homes" or "trailers" on the property could not be extended by implication to restrict the construction or installation of "modular homes." The Court reasoned that the plain language of the covenant did not expressly restrict the installation of modular homes, and that modular homes were defined by statute and case law as separate from mobile homes or trailers. *Id.* at 326. These cases, however, are inapposite to the case-at-bar. In both ***Turnley*** and ***Williams***, one property owner argued that the express covenants at issue in the case should be extended by implication to prohibit actions, i.e. re-subdividing the property or installing a modular home, that was not expressly prohibited by the plain language of the covenants. In this case, however, the plain language of the covenants at issue expressly states that the home to be constructed on Lot #2 is to utilize a "conventional" subsurface sewage system. As previously discussed, the Court cannot construe a restrictive covenant "to defeat the plain and obvious purposes of a restriction." 20 Am. Jur. 2d Covenants, Etc. § 170. Instead, where "the meaning of the language of the [covenant] is plain" the restriction need not be construed against the grantor and may be enforced as written. *Id.* Here, the restrictive covenants contained on the Final Subdivision Plat "plain[ly] and obvious[ly]" state that the home on Lot #2 is approved for a conventional subsurface sewage system. Because reference to a conventional system is clearly contained in the Plat Notes, this Court is not required to extend the covenant at issue by implication to come to the conclusion that the Plat Notes contemplate the use of a conventional system for the benefit of the home on Lot #2.

Instead, we agree with the reasoning in ***Stracener*** that a restriction that expressly designates what may be placed on the property operates as a bar to any non-conforming uses of the property. *See **Stracener***, 737 S.W.2d at 538–39. The plan language of the restrictive covenants contained on the Final Subdivision Plat clearly states that the Morrows are approved to install a "conventional" sewage disposal system for the benefit of the home on Lot#2. Following the reasoning of ***Stracener***, the express designation that the home on Lot #2 have a "conventional" system is a bar to the installation of any non-conventional system, i.e. an experimental wetland system. In addition, this restriction applies equally to a system built on Lot #2 or to one built on the easement on Lot #3 because the plain language states that the home on Lot #2 is approved for the conventional system, rather than limiting such restriction to one lot or the other. It is undisputed that any sewage disposal system installed by the Morrows, whether on Lot #2 or on the easement on Lot #3, would be for the use and benefit of the home on Lot #2. Accordingly, the restrictive covenants limiting the home on Lot #2 to the use of a conventional sewage disposal system apply with equal force regardless of whether the Morrows choose to install the system on Lot #2 or on the easement on Lot

#3.

The Morrows next argue that, even if the restrictive covenants at issue require the installation of a conventional system, the court should allow the installation of the experimental wetland sewage disposal system because this system is consistent with the purpose of the contract between the Morrows and the Berniers—to allow the Morrows to build a home on Lot #2 with an adequate, state-approved sewage system— and, therefore, is not a non-conforming use of the property. To support this argument, the Morrows cite the recent case of *Rogers v. Roach*, No. M2011-00794-COA-R3-CV, 2012 WL 2337616 (Tenn. Ct. App. June 19, 2012). *Rogers* involved the extent of an egress/ingress easement. The parties did not dispute that the plaintiff held an implied easement to cross the defendant's property on the basis of necessity and prior use. The dispute concerned the width of the easement and whether the owner of the servient estate was permitted to place a fence close to the easement, which decreased the useable area of the easement. The trial court dismissed the plaintiff's interference claim. The Court of Appeals, however, reversed and remanded for further proceedings, concluding that the plaintiff had presented evidence establishing the *prima facie* elements of her interference claim. In another case, *Regen v. East Form Farms LP*, No. M2008-01414-COA-R3-CV, 2009 WL (Tenn. Ct. App. Nov. 4, 2009), this Court held that an increase in traffic on an easement was not unreasonable because the easement contained no restrictions regarding the number or type of vehicles that could use the easement, or any other restrictions from which the Court could conclude that the increased traffic would create an unreasonable increase in burden on the servient estate. The cases cited by the Morrows are inapposite to the case-at-bar, however, because they concern only the unreasonable use of an easement as inferred from the circumstances of the case. In this case, the Berniers do not argue that the use of the property at issue for a wetland sewage disposal system is an unreasonable burden, but that the express language of the restrictive covenants prevents such a use. Accordingly, the reasonableness or unreasonableness of the use of the property is not at issue. The question in this case simply concerns the plain language of the Final Subdivision Plat. Regardless of whether any restriction is reasonable or unreasonable, this Court simply cannot rewrite the parties' contract. "Our courts will not rewrite contracts just because they are ill advised or the parties miscalculated future events." *Wilson v. Scott*, 672 S.W.2d 782 (Tenn. Ct. App. 1984). Instead, we must enforce the contract, or in this case, the restrictive covenant, as written. *See Planters Gin Co. v. Fed. Compress & Warehouse Co.*, 78 S.W.3d 885, 889–90 (Tenn. 2002). The restrictive covenants contained on the Final Subdivision Plat expressly require that the sewage disposal system used by the home on Lot #2 be "conventional." As previously discussed, it is undisputed that the experimental wetland sewage disposal system sought by the Morrows is "experimental," rather than "conventional." Accordingly, regardless of whether the use of the land for a wetland system is reasonable, it is prohibited by the plain language of the parties' contract, as evidenced by the Plat Notes. Therefore, the judgment of the trial court

enjoining the Morrows from installing or constructing an experimental wetland sewage disposal system on either Lot #2 or the easement on Lot #3 is affirmed.

Finally, we consider the Berniers' argument that they should be awarded their attorneys fees on appeal pursuant to Tennessee Code Annotated Section 27-1-122, which provides:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

"Imposing a penalty for a frivolous appeal is a remedy which is to be used only in obvious cases of frivolity and should not be asserted lightly or granted unless clearly applicable, which is rare." *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 342 (Tenn. 2010). Although we have not decided the issues before us in the Morrow's favor, we are not persuaded that this appeal is frivolous or taken solely for delay. We, therefore, decline to award attorney's fees to the Berniers.

### V. Conclusion

The judgment of the Sumner County Circuit Court is affirmed and this cause is remanded to the trial court for all further proceedings as may be necessary and are consistent with this opinion. The costs of this appeal are taxed to Appellants Robert Morrow and Jamie Morrow, and their surety.

_____
J. STEVEN STAFFORD, JUDGE