IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
March 19, 2008 Session

## GREIG MASSEY, ET AL., v. R.W. GRAF, INC., ET AL.

Direct Appeal from the Chancery Court for Knox County
No. 158129-1   Hon. Michael W. Moyers, Chancellor

No. E2007-02474-COA-R3-CV  - FILED JUNE 26, 2008

Plaintiffs brought this declaratory judgment action, asking the Court to declare that building restrictions on platted parcels of property from a common grantor applied to a non-platted parcel purchased by defendants from a subsequent grantor.

The Trial Court, responding to a summary judgment motion, made detailed findings of facts, and concluded that the "subject to" language in the deeds was ambiguous and construed the language against the inclusion of restrictions on any portion of the property that lay outside the platted subdivisions.  Plaintiffs have appealed, and we affirm the Judgment of the Trial Court.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which SHARON G. LEE, J., joined, and CHARLES D. SUSANO, JR., J., dissented and filed an Opinion.

George W. Morton, Knoxville, Tennessee, for appellants.

Erica Taylor Greene, Morristown, Tennessee, and Michael S. Kelley, Knoxville, Tennessee, for appellees.

Jerry M. Martin, Knoxville, Tennessee, for Khaden and Melanie Sakalla.

John G. Lockridge, Knoxville, Tennessee, for Jeremy Burgin.

**OPINION**

Plaintiffs in this action sought a declaratory judgment, asking the Court to declare that covenants and restrictions applied to property owned by defendants and were enforceable against defendants.

Defendant filed a Motion for Summary Judgment based on his contentions that the restrictions as recorded did not include his property, the restrictions had expired and were abandoned by the community, and plaintiffs waived their right to enforce the restrictions. Graf supported the Motion with a Statement of Undisputed Material Facts that the Declarations of Restrictions recorded by the J. H. Dean Estate on August 6th 1954 apply to the parcels of land known as Deanbrook North Subdivision, Deanbrook South Subdivision, Deanbrook West Subdivision; that the parcel of land owned by Graf is not expressly listed or described in the Declaration of Restrictions recorded in 1954; and that there were numerous violations of the restrictions in the Deanbrook Subdivisions.

Plaintiffs' response, a Rule 56 statement, attempted to set out facts in controversy that would preclude summary judgment. Much of the statement consisted of conclusions of law or opinion of counsel. Plaintiffs also disagreed with several of the facts Graf maintained were undisputed, particularly as to allegations of violations of the restrictions Graf noted in the Deanbrook Subdivisions.

This Motion was denied by the Trial Judge, and subsequently a second Motion for Summary Judgment was filed.

In the second Motion, Graf asked for reconsideration of its Motion for Summary Judgment and stipulated to the facts set forth in Plaintiffs' Second Amended and Supplemental Bill for Declaratory Judgment. The facts set forth in Graf's Motion for Reconsideration were, according to Graf, undisputed.

Plaintiffs are property owners in the Deanbrook Subdivisions and seek to enforce restrictive covenants applicable to their subdivisions against adjacent property owners, including Graf. By its express terms the Declaration only applies to all lots within the Deanbrook Subdivisions.

After the Declaration was recorded the Dean Estate conveyed certain portions of the Deanbrook Subdivisions and the property outside the Deanbrook Subdivisions, including what is now the Graf Property, to the University of Tennessee via a Warranty Deed. The Warranty Deed provided:

> There is included within the above described acreage boundary all of what is know as Deanbrook North Sub-division . . . ; all of what is known as Deanbrook West Sub-division . . . ; and all of what is known as Deanbrook South Sub-division . . .
>
> There is, however, excepted the following subdivision lots which have heretofore

been sold:

Deanbrook South Sub-division

All of Lots Nos. 3 and 5, block, "A"
3 and 4, Block "B"; and 2 and 5 Block "C".

Deanbrook West Sub-division

All of Lots Nos. 1, 2, 3, 5, 6, 7,8, and 26,
Block "A"; Lot No. 7, Block "C"; Lots Nos.
1, 2, 3, 4, and 5, Block "D"; and Lots Nos.
2, 3, and 7, Block "F".

Deanbrook North Sub-division

All of Lots Nos. 1, 2, 4, 7, and 15

Graf explained in his motion:

> In other words, the outer physical bounds of the single conveyance to the University
> of Tennessee included, as a discrete subset, all the property contained in the Dean
> Subdivisions. The outer physical bounds of the single conveyance to the University
> of Tennessee also included the undivided 30+ acre parcel of land shown on Control
> Map 122K, Group B, as described in Deed Book 1310, p. 260 in the Register's Office
> of Knox County, Tennessee, which was subsequently purchased by Graf (the "Graf
> property"), and which is not and never has been part of the Deanbrook Subdivisions.
> In fact, the Graf property lies immediately adjacent to the eastern-most boundary of
> the Deanbrook South Subdivision.
>
> As shown in the above excerpted language from the Warranty Deed, the conveyance
> to the University of Tennessee excepted twenty-eight lots within the Deanbrook
> Subdivisions that had previously been sold to third parties. In other words, the
> University of Tennessee was only purchasing lots from the Deanbrook Subdivisions'
> original developers that had not already been sold to individual buyers.
>
> Even though the conveyance to the University of Tennessee did not include twenty-
> eight of the Deanbrook Subdivisions' previously-sold lots, the original developers
> clearly wanted the Deanbrook Declaration of Restrictions and existing easements to
> apply to the Deanbrook lots that were conveyed. Thus, the following language
> appears in the Warranty Deed:
>
> This conveyance, however, is made **subject to** Restrictive Covenants applicable to

all of the lots located in the Deanbrook Sub-divisions of record in book of deeds 954, page 564, in the Register's Office of Knox County, Tennessee, to which said instrument specific reference is hereby made for said conditions, limitations, reservations and restrictions. (emphasis added)

This conveyance is further made subject to all existing drainage, utility and other easement rights, including but not limited to, all drainage and utility easements shown or noted on the recorded maps of the Deanbrook Sub-divisions.

Plaintiffs did not dispute the foregoing facts.

Graf argued that as the Declaration at issue did not expressly apply to the Graf property and the covenants should not be extended to apply to it. Graf points out that restrictive covenants are not favored and will be construed against the party trying to enforce them and that courts avoid extending or enlarging covenants by implication. Specifically, he argued that the "subject to" language in the conveyance of the Graf property and the Deanbrook subdivisions to the University of Tennessee was insufficient to incorporate the Deanbrook Declaration to the conveyance of the Graf property. Alternatively, Graf argued that the language in the Warranty Deed referencing the Deanbrook Declaration was ambiguous and, as such, should be construed against the applicability to the Graf property.

Plaintiffs countered that the recorded restrictions, were expressly applicable to the tracts of land within the subdivisions, and were expressly applicable to the Graf Property based on the language of the deed from the Dean Estate to the University of Tennessee. Alternatively, plaintiffs contended that, based on the actions of the Dean Estate, the restrictions are applicable to the Graf Property based on the doctrine of implied negative reciprocal easements upon the entire tract.

A hearing on the Motion for Summary Judgment was held on December 18, 2006 before the Chancellor who granted Summary Judgment to defendants. The Chancellor's Memorandum Opinion set forth the following findings of undisputed material facts:

1.  The Graf Property is a portion of an original tract of land owned by the estate of J. H. Dean. The original tract was approximately 104 acres in area. Approximately on half of this tract was subdivided into three residential Subdivisions designated as Deanbrook North, Deanbrook South and Deanbrook West. The plats of the Subdivisions are recorded in Knox County Map Book 20 at pages 157 - 159. In August 1954 the Dean Estate recorded a Declaration of Restrictions in Knox County deed book 954, page 564, which expressly applied to the three Deanbrook subdivisions. The remainder of the original tract was unplatted and undivided until December 1965. During that period of eleven years some tracts in the subdivisions were sold while other tracts in the subdivision were unsold.

-4-

2.      In 1965 the Dean Estate sold the entire 104 acre tract, exclusive of those lots within the Subdivisions that had already been sold, to the University of Tennessee. The conveyance to the University of Tennessee included both the platted subdivisions and the land that was outside the platted subdivisions (including what is referred to by the parties as the Graf Property). The deed includes the following language:

This conveyance is made subject to restrictive covenants applicable to all of the lots located in the Deanbrook Sub-divisions . . . To which said instrument specific reference is hereby made for said conditions, limitations, reservations and restrictions.

3.      In July 2003 the University of Tennessee transferred by Quitclaim Deed a tract of approximately thirty acres to the Defendant R. W. Graf, Inc., which was part of the original Dean tract transferred to the University of Tennessee. The tract conveyed to Graf was outside the subdivided portion of the Dean tract.

4.      Graf platted its tract and began to develop it as a residential subdivision. It is undisputed that the Graf development does not comply with the recorded restrictions applicable to the Deanbrook subdivisions.

5.      Plaintiffs are owners of property within the Deanbrook Subdivisions who seek a declaration that the recorded declarations are applicable to the entire tract conveyed to the University of Tennessee, including the Graf property. Several parties have purchased lots from Graf and they are named defendants as necessary parties to this litigation.

The Trial Court's conclusions of law were:

1.      Regarding the "subject to" language in the deed from the Dean Estate to the University of Tennessee, the Trial Court found that it was ambiguous and could be construed to apply the restrictions only to the subdivisions, as was originally intended. On the other hand, the "subject to" phrase could reflect the intent of the grantor (the Dean Estate) to apply the recorded restrictions to the entirety of the tract conveyed to the University of Tennessee, including the unsubdivided portion of the tract which encompassed what is now the Graf Property. The Trial Court stated that it well established that "any ambiguity in the terms of [a][] covenant or intent of the parties will be resolved against the restriction." Thus, the Court, finding that the undisputed facts of this case create an inherent ambiguity in the "subject to" language, held that it had no choice but to strictly construe the language against the inclusion of the restrictions on any portion of the property that lay outside of the

-5-

Deanbrook subdivisions. [1]

2.    The Trial Court then considered Plaintiffs' alternative claim that the actions of the original grantors caused the creation of an implied negative reciprocal easement burdening the Graf Property. The Trial Court determined that an implied negative reciprocal easement had not arisen and that the restrictions did not apply to the Graf Property. The Court relied on the Tennessee Supreme Court case *Land Developers Inc. v. Maxwell*, 537 S. W. 2d 904, 912 (Tenn. 1976) and the *Restatement of the Law (3d) Property on Servitudes* § 2.14(g) when it concluded that there would have to be evidence that the grantor had the intent for a general plan for development of the entire original tract for a negative reciprocal easement to be attached to the Graf Property. The Trial Court held that no such intent on the part of the Dean Estate was in evidence and held that the restrictions did not apply to the Graf Property by way of a negative reciprocal easement.

Further, the Trial Court, relying on the *Restatement of the Law (3d) Property on Servitudes* § 2.14(I), held that the implied reciprocal servitude doctrine is not pertinent because the grantors only made the restrictions applicable to the platted Deanbrook subdivisions and not to the tract outside the subdivisions. [2]

Plaintiffs appealed to this Court and raised these issues:

    A.    Did the Trial Court err in granting summary judgment in favor of appellees based on a finding that the language in the deed to the University of Tennessee referencing the restrictions was ambiguous?

    B.    Did the Trial Court err in granting summary judgment in favor of appellees based on a finding that no implied negative reciprocal easements had arisen in favor of appellants?

Appellees also raised the issue of whether the appeal was frivolous.

Summary judgment is appropriate only when the moving party demonstrates that

---

[1]  The Trial Court considered Plaintiff's contention that a conveyance made "subject to" restrictions set forth in another deed or instrument referred to will not, without more, make the restrictions applicable to the property conveyed if in fact the restrictions do not otherwise apply. The Court reviewed the one Tennessee case to so hold, *Winstead v. Byerly,* 1984 Tenn App. Lexus 2946, as well as 84 A. L. R. 2d 780. However the Trial Court did not base its holding that the restrictions were not applicable to the Graf property on this basis.

[2] The Trial Court did not cite a Tennessee case for the principle that the doctrine of implied negative reciprocal easement never applies if the restrictions are recorded.

there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law. Tenn. R. Civ. P.56.03; *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993). Appellate courts review a summary judgment motion *de novo* as a question of law without a presumption of correctness. *Finister v. Humboldt General Hosp., Inc.*, 970 S.W. 2d 435, 437 (Tenn. 1998); *Robinson v. Omer*, 952 S.W. 2d 423, 426 (Tenn. 1997). The evidence and all reasonable inferences are viewed in the light most favorable to the nonmoving party. *Byrd*, 847 S.W. 2d at 210-211.

Plaintiffs contend that the language in the deed from the Dean Estate to the University of Tennessee referencing the restrictive covenants expressly applies the restrictions to the non-subdivided part of the property conveyed by the deed. Since the Chancellor held the language in the deed to be ambiguous, our first inquiry is whether the language is ambiguous and involves the proper construction of a restrictive covenant.

The construction of restrictive covenants, like other written contracts, is a question of law. *Maples Homeowners Ass'n, Inc. v. T & R Nashville Ltd. P'ship*, 993 S.W.2d 36, 38 - 39 (Tenn. Ct. App.1998). Our analysis starts with the basic principal of property law that a property owner's right to own, use, and enjoy private property is fundamental. *Nollan v. California Costal Comm'n*, 483 U.S. 825, 831, 107 S. Ct. 3141, 3145 (1987); *McArthur v. East Tenn. Natural Gas Co.*, 813 S.W.2d 417, 419 (Tenn.1991). In 1839 the Tennessee Supreme Court embraced this principal in *Humes v. Mayor of Knoxville*, 20 Tenn. (1 Hum.) 403 (1839) and said:

> [E]very proprietor of land, where not restrained by covenant or custom, has the entire dominion of the soil and the space above and below to any extent he may choose to occupy it, and in this occupation he may use his land according to his own judgment, without being answerable for the consequences to an adjoining owner, unless by such occupation he either intentionally or for want of reasonable care and diligence inflicts upon him an injury.

*Humes* at 407.

Because restrictive covenants are in derogation of the fundamental right of free use and enjoyment of real property, they are not favored under Tennessee law. *Williams v. Fox*, 219 S.W.3d 319, 324 (Tenn. 2007)(citing *Arthur v. Lake Tansi Vill., Inc.*, 590 S.W.2d 923, 927 (Tenn.1979). Restrictive covenants are strictly construed. *Williams* at 927.

Any doubt concerning the applicability of a restrictive covenant will be resolved against the restriction, *Richards v. Abbottsford Homeowners Ass'n*, 809 S.W.2d 193, 195 (Tenn. Ct. App.1990) and, likewise, any ambiguity in the terms of the restrictive covenant will be resolved against the restriction. *Parks v. Richardson,* 567 S.W.2d 465, 467-468 (Tenn. Ct. App. 2977). Similarly, when the terms of a covenant may be construed more than one way, the courts must resolve any ambiguities against the party seeking to enforce the restriction and in a manner which advances the unrestricted use of the property. *Hillis v. Powers*, 875 S.W.2d 273, 275-76 (Tenn. Ct. App.1993); *Parks*, at 468 .

-7-

The issue before us is whether the language in the Warranty Deed from the Dean Estate to the University of Tennessee regarding the restrictions is ambiguous as to whether the referenced restrictions apply to the entire conveyance, the platted Deanbrook subdivisions as well as the unsubdivided tract, or only to the Deanbrook subdivisions. This Court, in *Hillis v. Powers*, 875 S. W. 2d 273, 276 (Tenn. Ct. App. 1993) considered the meaning of the term "ambiguity" in the context of a restrictive covenant as follows: "The term 'ambiguity' has two primary meanings. It can mean doubt or uncertainty in a general way; or it can mean doubt or uncertainty arising from the possibility of the same language being fairly understood in more ways than one." *Hillis* at 276. That Court concluded that the second definition is the one that can be fatal to a restrictive covenant in a deed.

The language in the Warranty Deed from the Dean Estate to the University of Tennessee is as follows: "This conveyance, however, is made subject to Restrictive Covenants applicable to all of the lots located in the Deanbrook Sub-divisions of record in book of deeds 954, page 564, in the Register's Office of Knox County, Tennessee, to which said instrument specific reference is hereby made for said conditions, limitations, reservations and restrictions." This language is susceptible to two very different meanings. It could mean that the referenced restrictive covenants applies to all of the property conveyed including the unsubdivided tract, that included the Graf Property. Or it could mean that the Dean Estate intended to have the referenced restrictive covenants apply only to the lots within the Deanbrook subdivisions as was the original intent when the restrictions were recorded in 1954. Accordingly, we conclude that ambiguity exists.

However, plaintiffs argued that the Word and Rochelle deeds demonstrate that the Dean Estate intended the recorded declarations to apply to the unsubdivided tract as well as the subdivisions. In those deeds the Dean Estate conveyed lots in the unsubdivided tract to grantees and specifically provided "that the restrictive covenants now applicable to Deanbrook South Subdivision, which said covenants are of record . . . in Book of Deeds 954 at Page 564 . . . shall be applicable to the property herein conveyed." Plaintiffs contend that this language is evidence of the grantor's intent regarding the conveyance to the University of Tennessee, but we are not persuaded. First, the language referencing the restrictions in the Word and Rochelle deeds is clear and unambiguous, unlike the language in the University of Tennessee deed, and secondly, because the Word and Rochelle deeds each conveyed just one lot, which was located in the unsubdivided tract as opposed to multiple lots located in the subdivisions, and the unsubdivided tracts as in the deed to the University, there was no question as to what lot the restrictions were to apply. Third, the language at issue in the Word and Rochelle deeds demonstrates how easily the grantor could have extended the restrictions to the property outside the subdivisions in the University of Tennessee deed if that had been its intention. These deeds offer no illumination as to the intent of the grantor regarding the University of Tennessee deed.

Since the terms of the restrictions in the University of Tennessee deed are ambiguous, we are obliged to resolve such ambiguity against the party seeking to enforce the restriction and in a manner which will advance the unrestricted use of the property. The Trial Court did not err in

finding the restrictions did not apply to the Graf Property.[3]

Next, plaintiffs argue that even if the language in the University of Tennessee deed did not expressly incorporate the restrictions as to the Graf property, the restrictions apply under the doctrine of implied negative reciprocal easements. This Court in *Leach v. Larkin*, No. 919193, 1993 WL 377629 (Tenn. Ct. App. Sept. 24, 1993) summarized Tennessee law regarding negative reciprocal easement as follows:

> A property owner may sell off parcels of a tract to different persons and may include in the deeds restrictive covenants for the benefit of not only the property owner but also the other persons who buy portions of the tract. In this circumstance, the grantees acquire not an absolute and unqualified title to their respective parcels, but rather a title limited by the restrictions contained in the deed. *Land Developers, Inc. v. Maxwell*, 537 S.W.2d 904, 912 (Tenn.1976); *Ridley v. Haiman*, 164 Tenn. 239, 252, 47 S.W.2d 750, 754 (1932); *Laughlin v. Wagner*, 146 Tenn. 647, 653, 244 S.W. 475, 477 (1922). While some ambiguity exists concerning the technical name of the grantees' interests arising from these restrictive covenants, the interest is now commonly known in Tennessee as a reciprocal negative easement. *Land Developers, Inc. v. Maxwell*, 537 S.W.2d at 912; *Ridley v. Haiman*, 164 Tenn. at 252, 47 S.W.2d at 754; *Stracener v. Bailey*, 737 S.W.2d 536, 537-38 (Tenn. Ct. App.1986).

> Negative reciprocal easements circumscribe the free use of property and, therefore, are not favored even though they have been part of our jurisprudence for many years. *Land Developers, Inc. v. Maxwell*, 537 S.W.2d at 913; *Essary v. Cox*, 844 S.W.2d 169, 171 1990). The courts enforce them with great care and resolve all ambiguities in favor of the free use of property.

> Both the grantor and the fellow grantees whose titles contain similar restrictive covenants may enforce their reciprocal negative easement rights in either a legal or an equitable proceeding. *Laughlin v. Walker*, 146 Tenn. at 654-55, 244 S.W. at 477. Grantees seeking equitable enforcement of a reciprocal negative easement must prove: (1) that the parties derived their titles from a common grantor; (2) that the common grantor had a general plan for the property involved; (3) that the common grantor intended for the restrictive covenant to benefit the property involved; and (4) that the grantees had actual or constructive knowledge of the restriction when they purchased their parcels. *See Ridley v. Haiman*, 164 Tenn. at 256, 47 S.W.2d at 755.

---

[3]Graf further argued that the phrase "subject to" in the deed and relied on an American Law Reports 84 A.L.R.2d 780, to support the contention that the restrictions cannot apply to the Graf property because of the use of that phrase. The Trial Court discussed this argument but did not rely on it to support its holding.

Grantees seeking judicial enforcement of their negative reciprocal easement rights are not necessarily limited to the recitals in the deeds to prove their case. In addition to the deeds from the common grantor, *Land Developers, Inc. v. Maxwell*, 537 S.W.2d at 912-913, they may also use recorded plats, *Arthur v. Lake Tansi Village, Inc.*, 590 S.W.2d 923, 928 (Tenn.1979); *Stracener v. Bailey*, 737 S.W.2d at 538-39, or parol evidence of the circumstances surrounding the purchase of the property. *Ridley v. Haiman*, 164 Tenn. at 250, 47 S.W.2d at 753; *Maxwell v. Land Developers, Inc.*, 485 S.W.2d 869, 873 (Tenn. Ct. App.1972); *Owenby v. Boring*, 38 Tenn. App. 540, 549, 276 S.W.2d 757, 761 (1954).

Leach at * 3.

Plaintiffs claim that the Graf Property is subject to an implied negative reciprocal easement which is an extension of the doctrine of negative reciprocal easement to include property where restrictive covenants have not been expressly applied. The Restatement of Property Third explains the extension of the doctrine as follows:

The idea underlying the doctrine [of implied reciprocal servitudes] is that when a purchaser buys land subject to restrictions imposed to carry out a general plan of development, the purchaser is entitled to assume that all the land in the development is, or will be, similarly restricted to carry out the general plan. By selling land with restrictions designed to put into effect a general plan of development, the developer impliedly represents to the purchasers that the rest of the land included in the plan is, or will be, similarly restricted. That representation is enforced, on the grounds of estoppel, by imposing an implied reciprocal servitude on the developer's remaining land included in the plan. Because the implied-reciprocal-servitude doctrine undercuts the Statute of Frauds and creates uncertainty in land titles, it should be applied only when the existence of a general plan is clear and establishment of the servitude is necessary to avoid injustice.

REST 3d PROP-SERV § 2.14 (I)

Under this theory there must be a finding that the grantor had a general plan or scheme of development before it can be concluded that the property is subject to a reciprocal negative easement or an implied reciprocal negative easement. Here the Trial Court found there was no evidence that the grantor intended such a plan as to the unsubdivided tract. Our Supreme Court discussed the indicia for finding a general plan or scheme in the context of the doctrine of reciprocal negative easements in *Arthur v. Lake Tansi Village, Inc*. 590 S.W.2d 923, 928 (Tenn. 1979) but cautioned that while the doctrine of negative reciprocal easements is well recognized, it is to be applied with great care. *Land Developers, Inc., v. Maxwell,* 537 S.W.2d 904 at 913 (Tenn. 1976).

In this case, the properties known as Deanbrook Subdivision were platted with restrictions that expressly applied only to Deanbrook Subdivisions, and were recorded. The tract of

land that encompassed the Dean properties adjacent to the Deanbrook Subdivisions was not platted and was not expressly included in the recorded restrictions. Further, there was no general plan or scheme of development to include the unsubdivided properties in the Deanbrook Subdivisions and we affirm the Trial Court on his finding that the doctrine of negative reciprocal easement does not apply and that the recorded restrictions that expressly applied to plaintiff's property in Deanbrook Subdivision did not apply to the Graf property under this doctrine.

Finally, Graf contends that plaintiffs' appeal was frivolous because they had no reasonable chance for success. We are not persuaded that plaintiffs' appeal was baseless or taken just for reasons of delay, as required by Tenn. Code Ann. § 27 - 1 - 122, and we find this issue raised by appellees to be without merit.

We conclude the Trial Court was correct in awarding summary judgment in favor of defendants, and affirm the Judgment of the Trial Court and remand, with the cost of the appeal assessed to the appellants.

_____

HERSCHEL PICKENS FRANKS, P.J.