# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
August 18, 2016 Session

## DIANNE ELIZABETH LUTZAK, TRUSTEE OF THE DIANNE ELIZABETH LUTZAK FAMILY REVOCABLE TRUST v. PHOENIX AMERICAN DEVELOPMENT PARTNERS, L.P. ET AL.

**Appeal from the Chancery Court for Williamson County**
**No. 43113     James G. Martin III, Chancellor**
_____

**No. M2015-02117-COA-R3-CV – Filed October 18, 2017**
_____

The owner of undeveloped property sought a declaratory judgment that restrictive covenants governing an adjacent subdivision did not apply to its property. The developer of the subdivision and the homeowners' association of the subdivision filed counterclaims seeking a declaratory judgment that the restrictive covenants applied to the undeveloped property and attorney's fees and costs. On cross-motions for summary declaratory judgment, the trial court granted summary declaratory judgment to the owner of the undeveloped property. On appeal, the defendants argue that the trial court erred in finding no express restrictive covenants applicable to the undeveloped property and in refusing to enforce negative reciprocal easements by implication from an alleged common development plan. We conclude that the restrictive covenants, by their express terms, do not apply to the undeveloped property. We further conclude that the trial court properly declined to impose negative reciprocal easements on the undeveloped property. Thus, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which ANDY J. BENNETT and RICHARD H. DINKINS, JJ., joined.

Suzette Peyton, Brentwood, Tennessee, and George E. Copple, Nashville, Tennessee, for the appellants, Phoenix American Development Partners, L.P. and Spring Hill Place Homeowners' Association, Inc.

Douglas Berry, Nashville, Tennessee, for the appellee, Dianne Elizabeth Lutzak, Trustee of the Dianne Elizabeth Lutzak Family Revocable Trust.

# OPINION

## I.

### A.

This dispute concerns whether restrictive covenants that govern the Spring Hill Place Subdivision also apply to undeveloped property owned by Dianne Elizabeth Lutzak, as trustee of the Dianne Elizabeth Lutzak Family Revocable Trust (the "Trust"). On February 27, 2011, Spring Hill Place Land Partners Limited Partnership ("Spring Hill Partners") conveyed to the Trust 62 acres of undeveloped property adjacent to Spring Hill Place. In January 2014, the Trust applied to the Spring Hill Planning Commission for approval of its plan to develop a subdivision on the property. Spring Hill Partners and the homeowners of Spring Hill Place objected to the subdivision plan's proposed restrictive covenants, which differed from those of Spring Hill Place.

### 1. The Development of Spring Hill Place

The Trust's property was originally part of a much larger parcel owned by Saturn I Land Partners ("Saturn I") identified as "Tract 4.0, on the Tax Assessor's Map #166 of Williamson County, Tennessee." Tract 4.0 comprised 168 acres, the majority of which was conveyed to Spring Hill Partners in a series of warranty deeds under the terms of a Purchase and Sale Agreement between Saturn I and Spring Hill Partners' predecessor in interest.[1] Saturn I agreed to convey an initial parcel of 10 acres and also granted the purchaser a series of rolling options to purchase "a minimum part or all of the balance" of Tract 4.0. The remainder of Tract 4.0 was divided into subparcels representing "anticipated future development stages," which the parties acknowledged could be adjusted from time to time.

As part of the agreement, Saturn I required the purchaser to create "plans and other documents (the "Development Plan") necessary for the subdivision and development" of Tract 4.0 and to submit those plans to the Spring Hill Planning Commission for approval. Saturn I reserved the right to approve the plans before conveying any property. The agreement further specified that Tract 4.0 was to be developed substantially as provided in the development plan.

Spring Hill Partners' predecessor in interest filed with the Spring Hill Planning Commission a document entitled "Master Site Plan for Spring Hill Place." The master

---

[1] Less than a year after executing the Purchase and Sale Agreement, the original purchaser assigned its rights under the agreement to Spring Hill Partners.

site plan in the record is a drawing showing 376 residential lots in thirteen sections, along with roads and open spaces, on 168 acres. The Planning Commission approved a version of this master plan as a sketch plat on May 8, 2000.[2] The master site plan indicates that the drawing was revised multiple times after initial approval and was never recorded.

The final plat[3] for the first section of Spring Hill Place, containing 25 residential lots on 12 acres, was approved by the Planning Commission and recorded in the Register's Office for Williamson County on October 12, 2001. The final plat contained a notation that the platted lots were subject to restrictive covenants "as shown in Deed Book ____ Page ___ R.O.W.C., TN."

In March 2002, Spring Hill Partners recorded a Declaration of Covenants, Conditions and Restrictions for Spring Hill Place (the "Declaration"). The property subject to the Declaration was described as

> All of the property shown on the Final Plat of Spring Hill Place Phase 1, Section 1, being Lots 1 through 16 and Lots 45-53, as of record in the Register's Office of Williamson County Tennessee; and
>
> BEING all or a part of the same property conveyed to Spring Hill Place Land Partners, a Tennessee Limited Partnership, of record in Book 2079, page 492 in the Register's Office of Williamson County, Tennessee.

The Declaration also permitted additional property to be added "by means of Supplemental Declaration(s)."

---

[2] The Spring Hill Planning Commission Subdivision Regulations submitted by the parties in the court below define a sketch plat as:

> A generalized concept plan of subdivision offering information in regard to proposed improvements and natural features of the property in question prepared prior to preliminary plat to save time and expense in reaching general agreement as to the form of the plat and the objective of these regulations.

Subdivision Regulations § 2.2. A sketch plat must "[i]nclude all land which the applicant proposes to subdivide and all land immediately adjacent, extending two hundred (200) feet there from . . . ." *Id.* § 3.1(7). Planning Commission review of a sketch plat "is intended to establish the direction and basis for the subdivision proposal before substantial amounts of time and money have been invested in a very detailed proposal." *Id.* § 3.2(3). Approval of a sketch plat allows an applicant to prepare a more detailed preliminary plat and construction plans for the proposed subdivision. *Id.* § 3.1(9).

[3] Subdivision lots may not be sold to lot owners until a final plat has been approved by the appropriate planning commission and recorded. Tenn. Code Ann. § 13-3-410(a)(1)(A) (Supp. 2017).

Saturn I conveyed portions of Tract 4.0 to Spring Hill Partners by three warranty deeds, executed on July 15, 2003, February 27, 2004, and December 22, 2004. The recorded warranty deeds specified that the conveyance was subject to the "Declaration of Covenants, Conditions and Restrictions, and By-Laws, of record in Book 2407, page 701, in said Register's Office."

During the following years, Spring Hill Partners developed additional sections of Spring Hill Place, recording a final plat for each.[4] Each plat noted that the lots were subject to the Declaration, referencing the Declaration by deed book and page number. When homeowners purchased lots in Spring Hill Place, each deed also specified that the purchased lot was subject to the Declaration.

2. The Conveyance to the Trust

Spring Hill Partners financed the subdivision development through a loan from First Tennessee Bank N.A., secured by a deed of trust on the real property. At some point, Spring Hill Partners defaulted on the bank loan, and First Tennessee Bank began foreclosure proceedings. At that point, Spring Hill Partners owned 43 platted lots and 62 acres of undeveloped property.

On May 24, 2010, Spring Hill Partners entered into an agreement with the Trust. Under the agreement, the Trust agreed to purchase the defaulted loan from First Tennessee Bank and to stop the foreclosure proceedings.[5] In exchange, for the next five years, the agreement required Spring Hill Partners to pay the Trust ninety percent of the net proceeds from the sale of the remaining platted lots and to continue its role as the developer of the subdivision. Included among the duties of the developer was the duty to amend the Declaration to "incorporate all lots that have been platted and made available for purchase."

Spring Hill Partners further agreed to convey "ownership of the undeveloped and unplatted portion of the Development" to the Trust. But Spring Hill Partners retained a right of first refusal for the next five years.

The agreement also obligated Spring Hill Partners to obtain Planning Commission approval for the addition of two lots to Spring Hill Place. Thus, on June 21, 2010, Spring Hill Partners submitted a revised master plan for Spring Hill Place to the Planning Commission. The revised plan moved two lots from future Section Eleven and added them to the existing Section Nine-A.

---

[4] Final plats for sections of Spring Hill Place were recorded on October 18, 2002; November 18, 2003; April 15, 2004; May 20, 2005; May 20, 2006; and January 22, 2009.

[5] The parties amended their agreement twice to address issues not relevant to this appeal.

On the same day, Spring Hill Partners recorded the final plat for Section Nine-A. Like the previously recorded final plats, this one noted that the platted lots were subject to the Declaration.

By contrast, the warranty deed conveying the undeveloped property to the Trust did not expressly reference the Declaration. Rather, the deed provided that the conveyance was "subject to all conditions, easements, and all other matters of record in the Register's Office for Williamson County, Tennessee." But the property description, as later amended, acknowledged that the conveyed property was a portion of that property conveyed to Spring Hill Partners in the three warranty deeds delivered by Saturn I.

On January 20, 2012, Spring Hill Partners recorded a First Amendment to the Declaration to add the two newly-platted lots to the description of the property subject to the Declaration. Spring Hill Partners never recorded any other amendments to the Declaration.

B.

On April 28, 2014, the Trust filed this declaratory judgment action against Spring Hill Partners[6] and Spring Hill Place Homeowners' Association, Inc. (the "HOA") (collectively, the "Defendants") in the Chancery Court for Williamson County, Tennessee. The Trust asked the court to "declare and rule that the Covenants do not apply to the Undeveloped Land." Defendants counterclaimed for an award of costs and attorney's fees incurred in enforcing the Declaration.

On September 3, 2014, Defendants moved for summary judgment. In support of their motions, Defendants filed numerous documents, the affidavit of Taylor K. Spadafora, the Trust's discovery responses, and statements of undisputed material facts. The Trust opposed the motions and filed a motion for judgment on the pleadings.

The trial court denied the Trust's motion and deferred ruling on Defendants' motion for summary declaratory judgment. The trial court ruled that the individual homeowners in Spring Hill Place were necessary parties to the litigation and ordered the Trust to join the individuals as parties or as class defendants. The Trust then filed an amended complaint adding the "unnamed lot owners within Spring Hill Place Subdivision" as class defendants. And the court allowed the HOA to serve as class representative.

---

[6] In March 2015, Spring Hill Partners assigned its rights to a new limited partnership, Phoenix American Development Partners L.P. And the court substituted Phoenix American Development Partners L.P. for Spring Hill Partners. *See* Tenn. R. Civ. P. 25.03.

On April 14, 2015, the Trust filed its own motion for summary declaratory judgment accompanied by a statement of undisputed material facts. In support of its motion, the Trust relied on an affidavit from Steven Lutzak, Defendants' discovery responses, and documents in the record.

On July 7, 2015, the trial court issued a memorandum and opinion denying Defendants' motions for summary declaratory judgment and granting the Trust's motion. The court held that, by its express terms, the Declaration did not apply to the undeveloped property. The court further held that no document in the record expressly subjected the Trust's property to the restrictive covenants in the Declaration. The court rejected Defendants' argument that the references to the Declaration in the Trust's chain of title subjected the Trust's property to the Declaration.

The court also refused to impose the restrictive covenants as implied negative reciprocal easements based on a common plan of development. The court held that the common plan doctrine was inapplicable because Spring Hill Partners "expressly retain[ed] to itself the 'right to deviate from the plan' by adding or removing property from the subdivision and subjecting additional property to the Declaration."

## II.

Summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04; *see also Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 83 (Tenn. 2008). As noted above, both parties moved for summary judgment, supported by statements of undisputed facts. When considering cross-motions for summary judgment, the trial court "must rule on each party's motion on an individual and separate basis." *CAO Holdings, Inc. v. Trost*, 333 S.W.3d 73, 83 (Tenn. 2010). For the respective competing motions, the trial court must view the evidence in the light most favorable to the opposing party and draw all reasonable inferences in the opposing party's favor. *See Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). The court is not to "weigh" the evidence when evaluating a motion for summary judgment. *Martin*, 271 S.W.3d at 87.

A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal. *Id.* at 84; *Blair v. W. Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004). We review the summary judgment decision as a question of law. *Martin*, 271 S.W.3d at 84; *Blair*, 130 S.W.3d at 763. Accordingly, we must review the record de novo and make a fresh determination of whether the requirements of Tennessee Rule of Civil Procedure 56 have been met. *Eadie v. Complete Co.*, 142 S.W.3d 288, 291 (Tenn. 2004); *Blair*, 130 S.W.3d at 763.

6

Construction of a restrictive covenant is also a question of law, which we review de novo with no presumption of correctness. *Hughes v. New Life Dev. Corp. (Hughes II)*, 387 S.W.3d 453, 480-81 (Tenn. 2012). "Tennessee law does not favor restrictive covenants because they are in derogation of the rights of free use and enjoyment of property." *Id.* at 474-75. Thus, our courts strictly construe restrictive covenants and resolve any doubt concerning the applicability of a restrictive covenant against the restriction. *Id.* at 481. Ambiguities will be construed "against the party seeking to enforce the restriction and in a manner which advances the unrestricted use of the property." *Id.*

Still, in appropriate cases, restrictive covenants, like any other contract, "will be enforced according to the clearly expressed intention of the parties." *Benton v. Bush*, 644 S.W.2d 690, 691 (Tenn. Ct. App. 1982). When properly created, restrictive covenants run with the land and are "binding on remote grantees if they appear in the chain of title or if the grantee had actual notice of them when the grantee acquired title." *Hughes v. New Life Dev. Corp. (Hughes I)*, No. M2008-00290-COA-R3-CV, 2009 WL 400635, at *3 (Tenn. Ct. App. 2009). On appeal, as they did before the trial court, Defendants argue the undeveloped property is subject to the Declaration under two theories: express language of the instruments or by implication in light of an alleged common plan of development.

A. EXPRESS RESTRICTIVE COVENANTS

We construe restrictive covenants using the rules of construction generally applicable to other contracts. *Hughes II*, 387 S.W.3d at 475; *Shea v. Sargent*, 499 S.W.2d 871, 874 (Tenn. 1973). We strive to ascertain and give effect to the intent of the parties as expressed in the contractual language. *Hughes II*, 387 S.W.3d at 465. We give the words used their fair and reasonable meaning and will not extend a restriction beyond its clearly expressed scope. *Maple Homeowners Ass'n, Inc. v. T & R Nashville Ltd. P'ship*, 993 S.W.2d 36, 39 (Tenn. Ct. App. 1998). If the language is clear, it is unnecessary to seek further clarification. *Shea*, 499 S.W.2d at 874.

Neither the agreement between Spring Hill Partners and the Trust nor the Trust's warranty deed expressly subjected the undeveloped property to the Declaration. The Declaration itself describes the affected property as that property "which is and shall be held, transferred, sold, conveyed, used, occupied, mortgaged and/or otherwise encumbered subject to this Declaration . . . located in Spring Hill, Williamson County, Tennessee, and . . . more particularly described on Exhibit A." Exhibit A includes no reference to the Trust's property. Instead, the property subject to the Declaration is described as "[a]ll of the property shown on the Final Plat of Spring Hill Place Phase 1, Section 1." Although Spring Hill Partners retained the right to add more property, as

7

discussed below, the Trust's property was not added to the terms of the Declaration by a supplemental declaration.

We are unpersuaded by Defendants' argument that the three warranty deeds in the Trust's chain of title subject the Trust's property to the Declaration. Interpretation of a deed is a question of law. *Hughes II*, 387 S.W.3d at 466. We primarily seek to ascertain the grantor's intent "from the words of the deed as a whole and from the surrounding circumstances." *Id.* Defendants maintain that it is clear from the surrounding circumstances that Saturn I intended for the Declaration to apply to all the property conveyed to Spring Hill Partners, including the Trust's property. In addition, the three warranty deeds specified that the conveyance was subject to the "Declaration of Covenants, Conditions and Restrictions, and By-Laws, of record in Book 2407, page 701, in said Register's Office."

But interpreting the deeds as Defendants suggest would require us to disregard the clear provisions of the Declaration and extend the restrictive covenants beyond their express terms. *See id.* at 475-76 ("Courts . . . cannot countenance disregarding contractual provisions simply because a party later finds the contract to be unwise or unsatisfactory.") (citations omitted); *Hughes I*, 2009 WL 400635, at *4 (refusing to interpret a similar reference in a deed to override the plain language of a recorded declaration of covenants). The Declaration as noted above is expressly limited to certain real property, which does not encompass the Trust's property, and we are compelled to interpret it in that manner.

The Declaration specifies not only the property affected but also the sole method for adding more property. Article II, Section 2 of the Declaration provides:

> Developer and its successors and assigns, reserves the right to add, from time to time, one or more additional tracts of real property to the terms of this Declaration by means of Supplemental Declaration(s) to be signed by Developer or its successors and assigns and recorded in the Williamson County Register of Deeds Office. Such additional real property must be adjacent to or contiguous to the Property as then configured at the time of any such addition. Effective with the date of recordation of the Supplemental Declaration adding such additional property all Lot Owners within such additional property shall have the same rights and obligations as all other Lot Owners in the Subdivision prior to the recordation of said Supplemental Declaration(s).

Defendants assert, and we agree, that Spring Hill Partners could add more property to the terms of the Declaration without expressly calling the document a "supplemental declaration." Even so, the method used must comply with the quoted language. Here, Spring Hill Partners, the developer, simply failed to add the Trust's property to the terms

of the Declaration by supplemental declaration or otherwise in conformity with the Declaration's terms.

For these reasons, we conclude that no express restrictive covenants apply to the Trust's property. We next consider Defendants' claim that the Declaration applied to the Trust's property by implication.

### B. IMPLIED RESTRICTIVE COVENANTS BY COMMON PLAN OF DEVELOPMENT

Tennessee courts recognize implied restrictive covenants in three circumstances: "(1) implication by necessity, (2) implication by conveying property with restrictions under a general plan or scheme of development, (3) implication by reference to a plat." *Arthur v. Lake Tansi Vill., Inc.*, 590 S.W.2d 923, 927 (Tenn. 1979). Here, Defendants argue that the restrictive covenants apply by implication because a common development plan governed all of Tract 4.0, including the Trust's property.[7]

When a developer sells land with restrictions designed to implement a general plan of development, he "impliedly represents to the purchasers that the rest of the land included in the plan is, or will be, similarly restricted." *Massey v. R.W. Graf, Inc.*, 277 S.W.3d 902, 910 (Tenn. Ct. App. 2008) (quoting RESTATEMENT (THIRD) OF PROPERTY (SERVITUDES) § 2.14 cmt. i (Am. Law Inst. 2000)). Equity will impose an implied negative reciprocal easement on the remainder of the property included in the common plan. *Id.* If a common plan has been established, "the fact that some lots in a subdivision are sold with no restrictions does not invalidate restrictions on the other subdivided lots." *Moore v. Phillips*, No. 01A01-9605-CH-00197, 1998 WL 272942, at *3 (Tenn. Ct. App. May 29, 1998). While our courts recognize this equitable doctrine, we only apply negative reciprocal easements with great care. *Land Developers, Inc. v. Maxwell*, 537 S.W.2d 904, 913 (Tenn. 1976).

Proof of a common development plan may include the deeds from the original grantor, recorded plats, or "parol evidence of the circumstances surrounding the purchase of the property." *Leach v. Larkin*, No. 919193, 1993 WL 377629, at *3 (Tenn. Ct. App. Sept. 24, 1993). Our courts have considered representations in sales brochures, maps, advertising and other oral statements relied on by purchasers in the development. *See Hughes I*, 2009 WL 400635, at *6-7; *see also Arthur*, 590 S.W.2d at 928 (describing ways of establishing a common development plan).

---

[7] In their reply brief on appeal, the Defendants argue that this case supports implication of negative reciprocal easements by necessity and by reference to a plat. Because Defendants never raised these issues in the trial court, we deem these issues to be waived. *Emory v. Memphis City Sch. Bd. of Educ.*, 514 S.W.3d 129, 146 (Tenn. 2017).

The original purchase and sale agreement with Saturn I obligated Spring Hill Partners to create a development plan for Tract 4.0, and the master site plan submitted to the Planning Commission incorporated all 168 acres. But the record reveals that Spring Hill Partners revised the master plan numerous times over the years. Indeed, in the Declaration, Spring Hill Partners "reserve[d] the right to amend the Master Plan at any time as well as any amendments thereof and such rights shall include without limitation the right to reconfigure Lots, increasing or decreasing the number of different Lot types, and adding or removing property from the Subdivision." Spring Hill Partners' reservation of the right to alter the plan undercuts any argument that equity should enforce the plan. *See Hughes II*, 387 S.W.3d at 481 ("Based on all of these circumstances, we can only conclude that the amended Declaration [reserving the right to change the plan] does not serve as the basis for implied restrictive covenants, based on a general plan or scheme, applicable to New Life's property outside the platted lots.").

The general plan doctrine arose to protect purchasers who reasonably relied on a developer's representations that the restricted property they purchased was part of a general plan of development. *See* RESTATEMENT (THIRD) OF PROPERTY (SERVITUDES) § 2.14 cmt. b (Am. Law Inst. 2000) (discussing historical uses of the general plan doctrine). "By selling land with restrictions designed to put into effect a general plan of development, the developer impliedly represents to the purchasers that the rest of the land included in the plan is, or will be, similarly restricted." *Id.* at cmt. i. Equity imposed negative reciprocal easements to prevent the injustice that resulted from subsequent plan changes. *Id.* But the doctrine has no application when, as here, the "developer has expressly retained the right to deviate from the plan." *Id.*

Because Spring Hill Partners reserved the right to change the common plan, we conclude that the trial court properly declined to enforce negative reciprocal easements on the Trust's property. Defendants' proffered evidence that the Trust had actual notice of a common plan does not change our conclusion. Notice of the common plan would necessarily include notice of the developer's right to change the plan by adding or removing property.

**III.**

Based on the foregoing, we affirm the trial court's decision. This cause is remanded to the trial court for such further proceedings as are necessary and consistent with this opinion.

_____
W. NEAL MCBRAYER, JUDGE