FILED
09/19/2018
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 18, 2018 Session

**VILLAGE EAST ASSOCIATION, INC. v. DANIEL LAMB, ET AL.**

Appeal from the Chancery Court for Sevier County
No. 17-2-042          Telford E. Forgety, Jr., Chancellor

———————————————————

No. E2017-02275-COA-R3-CV

———————————————————

After the wildfires in Gatlinburg destroyed the Village East Condominiums, the unit owners decided unanimously not to rebuild. The Village East Association filed an interpleader petition in the Chancery Court for Sevier County, requesting that the court determine the appropriate distribution of the insurance proceeds among the unit owners. The trial court interpreted the Master Deed as requiring a proportionate distribution of the insurance proceeds based on the insurance coverage for each unit. The owners who desired equal distribution of the insurance proceeds appeal. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., and ARNOLD B. GOLDIN, JJ., joined.

R. Alexander Johnson, Sevierville, Tennessee, for the appellants, Sheila Dodgen, Gae Campbell, Timothy Fannin, Rita Montero, William Tolleson, and Johnnie Tolleson.

Brian T. Mansfield, Sevierville, Tennessee, for the appellees, Gary and Jane Morris, Bonnie Gardner, Paul D. and Linda A. Watson, Gary M. and Margaret A. Ducey, Trustees for The Ducey Trust, and William T. and Susan T. Atwell.

**OPINION**

**I.      BACKGROUND**

In November 2016, the Village East Condominiums ("Village East") were destroyed by the wildfires in Gatlinburg, Tennessee. Village East comprised four

buildings: Building A and Building B consisting of two units each, Building C with six units, and Building D with eight units. After the wildfires, the Village East owners unanimously voted to not rebuild the condominiums. The parties have since disposed of the remnant property by mutual agreement, splitting the sale proceeds equally between them. The distribution of insurance payouts for the destroyed units is at the center of this dispute.

The Village East Association ("Association") filed an Interpleader petition in the trial court, requesting that the court determine the proper distribution of insurance proceeds that were paid to the Association as a result of the wildfires. Owners Gary and Jane Morris, Bonnie Gardner, Paul D. and Linda A. Watson, Gary M. and Margaret A. Ducey, Trustees for The Ducey Trust, and William T. and Susan T. Atwell ("Proportional Advocates") wanted the insurance proceeds to be divided based on the amount of insurance coverage for each building. Other owners, namely Daniel Lamb, Sheila Dodgen, Gae Campbell, Timothy Fannin, Rita Montero, William Tolleson, and Johnnie Tolleson ("Equal Advocates") sought for the insurance proceeds to be divided into eighteen equal shares, with one share for each unit.

The court examined the Master Deed for Village East and found it to be ambiguous regarding the payout of insurance proceeds in the event the owners decided not to rebuild:

Article XII, <u>INSURANCE</u>:
. . .
5. <u>Association; Shares of Proceeds</u>:
. . .

(B) Units: Proceeds on account of damage to units shall be held in the following undivided shares:

. . .

(2) Where the building is not to be restored—an individual share for each unit owner, such share being the same as the individual share in the common elements appurtenant to his unit.

The trial court viewed other provisions in the Master Deed that used similar language (*see* Article VII, Paragraph 6[1]) in making its findings. Determining that the contractual language in Article XII was ambiguous, the court interpreted the phrase "such

_____

[1]Article VII, Paragraph 6: <u>Liability for Common Expenses</u>. Each unit owner shall be liable for a proportionate share of the common expenses such share being the same as the *undivided* share in the common elements which is appurtenant to his unit. (emphasis added)

share being the same as the individual share in the common elements appurtenant to his unit" to require a proportionate distribution, rather than an equal distribution of insurance proceeds.

Equal Advocates thereafter timely filed this appeal.

## II.    ISSUES

We restate the issue raised on appeal by Equal Advocates as follows:

Whether the trial court erred in interpreting the phrase "individual share in the common elements appurtenant to his unit" as meaning a proportionate distribution of the insurance proceeds to the individual owners.

## III.    STANDARD OF REVIEW

The court reviews issues of contractual interpretation *de novo*. *Perkins v. Metro. Gov't of Nashville & Davidson Cnty.*, 380 S.W.3d 73, 80 (Tenn. 2012) (citing *Allmand v. Pavletic*, 292 S.W.3d 618, 624–25 (Tenn. 2009)). We are guided by well-settled rules of construction. "A cardinal rule of contractual interpretation is to ascertain and give effect to the intent of the parties." *Allmand*, 292 S.W.3d at 630 (citing *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006)). We determine the parties' intent by examining the plain and ordinary meaning of the written words that are within the four corners of the contract. *84 Lumber Co. v. Smith*, 356 S.W.3d 380, 383 (Tenn. 2011) (citations omitted).

If the language is clear and unambiguous, the literal meaning of the contract language controls. *Allmand*, 292 S.W.3d at 630. However, the terms are ambiguous if they are "susceptible to more than one reasonable interpretation." *Watson*, 195 S.W.3d at 611. In such cases, we must apply other established rules of construction to aid in determining the contracting parties' intent. *Planters Gin Co. v. Fed. Compress & Warehouse Co.*, 78 S.W.3d 885, 890 (Tenn. 2002). The interpretation of the contract is a question of fact only when the ambiguity remains after having applied the appropriate rules of construction. *Dick Broadcasting Co., Inc. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 659 (Tenn. 2013).

"We will also give great weight to a trial court's factual findings that rest on determinations of credibility and weight of oral testimony." *Commerce Union Bank, Brentwood, Tennessee v. Bush*, 512 S.W.3d 217, 226 (Tenn. Ct. App. 2016). "For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect." *Id.*, citing *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000).

## IV.   DISCUSSION

### A.

This case involves the interpretation of a contract. Courts interpret a deed under the same rules of construction as contract interpretation. *Massey v. R.W. Graf, Inc.*, 277 S.W.3d 902, 908 (Tenn. Ct. App. 2008).

> Our central task in interpreting a contract is to ascertain and to give effect to the intent of the contracting parties.  The search for the parties' intent should focus on the four corners of the contract, the circumstances in which the contract was made, and the parties' actions in carrying out the contract. Contract interpretation is a matter of law and, therefore, is subject to *de novo* review in this Court.

*Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 465 (Tenn. 2012) (citations omitted); *Quebecor Printing Corp. v. L&B Mfg. Co.*, 209 S.W.3d 565 (Tenn. Ct. App. 2006). "Additionally, courts must adopt a sensible meaning and construe a [contract] to avoid absurd consequences." *Hughes*, 387 S.W.3d at 469.

The trial court found the wording of the Master Deed to be ambiguous and applied the rules of construction to determine the intent of the parties.  Looking within the four corners of the document, the court discovered internal inconsistencies in several places. For instance, the Master Deed stipulated that the ownership of the common elements shall be held "in equal parts,"[2] but it elsewhere stated that unit owners have a share in the property appurtenant to his unit as set forth in an "Exhibit E."[3]   There was no attached Exhibit E to be found.

In the event of such internal inconsistencies, the appropriate course of action was correctly stated in *Cocke Cnty. Bd. of Highway Comm'rs. v. Newport Utils. Bd.*, 690 S.W.2d 231 (Tenn. 1985): "As a rule, where there are, in a contract, both general and special provisions relating to the same thing, the special provisions control." *Cocke Cnty. Bd. of Highway Comm'rs.*, 690 S.W.2d at 237, quoting 17 Am. Jur. 2d *Contracts* § 270 (1964).  The Master Deed, while unclear on some other points, tied the disbursements of insurance proceeds to an individual share for each unit owner, such share being the same as the individual share in the common elements appurtenant to his unit.  The court

---

[2]*See* Article II, section 4.

[3]Article VII, paragraph 3.

reasoned that the sole purpose of such a phrase --"appurtenant to his unit"-- meant a proportionate share of the common elements, such common elements that pertained to each individual building. That is, those common elements which pertain to building D, apply to building D. Those common elements which serve building C are appurtenant to building C, and so on. The trial court found that the above interpretation was the only one justified by the language in the Master Deed. To hold otherwise would be to entirely read out that language --"appurtenant to his unit"-- giving it no effect whatsoever.

Presented with an ambiguous document, the court also looked at the course of dealing, which made the case an even closer one. All of the expenses over the years had been applied equally among the owners, 1/18th apiece. For example, when one unit flooded, repairs were paid out of the common fund even though the damage to the foundation walls for that unit would certainly have been appurtenant to that particular building. In spite of the language stipulating proportionate shares, the parties had construed the language governing common expenses as supporting 1/18th apiece. Regardless of the parties' course of dealing, the court determined that the specific insurance provisions of the deed stipulated a proportionate distribution of insurance proceeds in the case that the parties chose not to rebuild the units.

We find support for the determination of the trial court and affirm its order allocating the insurance proceeds building by building and based upon the replacement value of the separate units and buildings. Accordingly, the amount of coverage as to building D is to be divided by eight; the amount of coverage for building C is to be divided by six; and the amount of coverage for buildings A and B is to be divided by two.

## V. CONCLUSION

We affirm the decision of the trial court and remand this cause for all further proceedings as may be necessary and consistent with this opinion. The costs of this appeal are assessed equally to Daniel Lamb, Sheila Dodgen, Gae Campbell, Timothy Fannin, Rita Montero, William Tolleson, and Johnnie Tolleson.

_____
JOHN W. MCCLARTY, JUDGE